IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 16-12174 (___) <br><br> (Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO
SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND 1108 OF THE
BANKRUPTCY CODE, AUTHORIZING (I) THE DEBTORS TO HONOR
PREPETITION OBLIGATIONS RELATED TO CUSTOMER PROGRAMS AND
OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE
OF BUSINESS AND (II) BANKS TO HONOR AND PROCESS CHECK AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(c), 503(b)(1), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (i) authorizing, but not directing, the Debtors, in their business judgment, to continue, maintain, implement new, and/or terminate, and to pay, honor, and otherwise satisfy pre-petition obligations related to, their pre-petition customer practices and programs, in the ordinary course of business and in a manner consistent with past practice, and (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing. The facts and circumstances supporting this Motion are set forth in the concurrently filed

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

01:19291887.5

*Declaration of John D. Morberg In Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(c), 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

**I.    General**

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3. The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

01:19291887.5

2

5.     Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## II.     The Customer Programs

6.     Prior to the commencement of these chapter 11 cases, in the ordinary course of business, and as is customary in the food and beverage industry, the Debtors instituted and engaged in certain activities to develop and sustain a positive reputation and relationship with their patrons and customers.  To that end, the Debtors implemented the various customer programs and policies described in this Motion (collectively, the "Customer Programs"), which are designed to ensure customer satisfaction, develop and sustain customer relationships and loyalty, improve profitability, and generate goodwill for the Debtors and their products and services.

7.     The Customer Programs are integral to ensuring the smooth functioning of the Debtors' business.  As owners and operators of many casual dining locations, the Debtors have developed and designed various marketing strategies to generate business in the face of sophisticated competition.  Among these strategies, are certain Customer Programs, promotions, and practices designed to enhance revenues by, among other things, encouraging repeat business and developing new customer relationships.  As of the Petition Date, the Customer Programs consist of: (i) Gift Cards; (ii) the Charitable Giving Programs; and (iii) various coupon and discount programs (as these capitalized terms are defined below).

8.     The Debtors believe that they must promptly assure customers of their continued ability to satisfy prepetition and postpetition obligations under the Customer Programs to maintain their valuable customer base, goodwill, and a myriad of other important benefits derived therefrom, following the commencement of the these chapter 11 cases. Any inability of

the Debtors to promptly honor these obligations would impair goodwill and may lead to the loss of customer patronage. Continued use of the Customer Programs, on the other hand, will enable the Debtors to protect their customer base and revenue growth opportunities. Consequently, the Debtors seek the authority to maintain and administer the Customer Programs in the ordinary course of business.

9.  The following are general descriptions of the Debtors' primary Customer Programs:

**A.  Gift Cards**

10.  As part of the Debtors' operations, Debtor Garden Fresh Promotions, LLC ("GF Promotions") sells gift cards (the "Gift Cards") that are accepted as payment for purchases in the ordinary course of the Debtors' business. Debtor Garden Fresh Restaurant Corp. pays an administration fee to GF Promotions for administering this program. The Gift Cards may be purchased at the Debtors' restaurants, online on the Debtors' website, or from various other resellers that are authorized to issue Gift Cards. Once purchased, a Gift Card may be used like cash for purchases at the Debtors' restaurants, but may not be redeemed for cash or monetary credit except under limited circumstances where required by applicable state law. Upon purchase, the Gift Cards are "activated" and may then be redeemed at any time with no expiration date.

11.  Online and retail purchases are processed by third-party processors, Giftango and Blackhawk, respectively. The Debtors utilize third-party administrator GivEx to track purchases and redemptions of Gift Cards purchased at the Debtors' restaurants, online and at retail locations. Giftango, Blackhawk and GivEx are referred to herein, collectively, as the "Gift Card Parties". The Debtors maintain detailed transaction data regarding the sale of Gift Cards on

GivEx's system. However, the Debtors do not track and have no information about the identity of the holders of Gift Cards. Based on a review of their business records and prior holder activity, the Debtors expect that, as of August 31, 2016 approximately $5,405,000 of purchased Gift Cards are outstanding and may be redeemed at the Debtors' restaurant locations.

12. The Debtors pay the Gift Card Parties approximately $10,000 per month for service fees. As of September 30, 2016, the Debtors estimate that they owe GivEx and Giftango approximately $3,000 and $4,000, respectively, on account of prepetition obligations relating to the Gift Cards.

13. The Debtors seek the authority to continue to honor the Gift Cards in the ordinary course of business during the pendency of these chapter 11 cases, whether purchased before or after the Petition Date, consistent with past practices, and to pay any outstanding prepetition obligations to the Gift Card Parties relating to the Gift Cards.

### B. Coupons and Discount Programs

14. The Debtors, from time-to-time, engage in the distribution of coupons and promotional materials to customers that are redeemable for a certain dollar amount, percentage discount, or free meal. The Debtors believe that these coupons result in several million dollars of incremental revenue (net of the applicable discount).

### C. Charitable Giving Programs

15. The Debtors facilitate charitable donations by: (i) providing for electronic donations at the point of sale to various non-profit organizations, which are accounted for as a liability; and (ii) catering fundraisers to benefit non-profit organizations, wherein a portion of event sales are donated to the relevant charity (collectively, the "Charitable Giving Programs"). As of September 30, 2016, the Debtors estimate that they are holding approximately $200,000 to

be distributed under the Charitable Giving Programs. The Debtors seek authority to continue, in the ordinary course of business, to administer the Charitable Giving Programs, including administering the funds donated pre-petition.

## RELIEF REQUESTED

16. By this motion, the Debtors request authorization, but not direction, pursuant to sections 105(a), 363(b), 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code, (a) to continue, maintain, implement new, and/or terminate any Customer Programs, in their business judgment, in the ordinary course of business, (b) to pay, honor, and otherwise satisfy, in the Debtors' business judgment, their prepetition obligations thereunder in a manner consistent with past practice, and (c) to pay, honor, or otherwise satisfy prepetition processing costs and fees associated with the Customer Programs, including to the Gift Card Parties (collectively, the "Customer Obligations"). The Debtors also request the Court to authorize and direct the Debtors' Banks to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing.

## BASIS FOR RELIEF

### I. Honoring the Customer Obligations Is in the Best Interests of the Debtors' Estates.

17. Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. *Id.* § 363(b). The Debtors submit that the use of estate funds for payment of certain of the Customer Obligations is permitted by sections 503(b)(1) and 363(b) as necessary costs of preserving the estates. Honoring the Customer Obligations will enable the

01:19291887.5

6

Debtors to retain, maintain, and create valuable customer relationships, which will strengthen the Debtors' business and prospects for successfully prosecuting these chapter 11 cases.

18. In addition, under section 363(b), a court may authorize a debtor to pay certain prepetition claims. *See In re MPC Computs., LLC,* No. 08-12667 (Bankr. D. Del. Nov. 10, 2008) (authorizing, pursuant to section 363, the payment of prepetition claims of suppliers); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (referring to the court's earlier order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractor to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.; see also Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir. 1983).

19. Further, sections 1107(a) and 1108 authorize a debtor in possession to continue to operate its business. 11 U.S.C. §§ 1107(a), 1108. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

01:19291887.5

7

20. Further, to supplement the explicit powers described above, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the Debtors is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the Debtors." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177). The Debtors submit that honoring their prepetition obligations under the Customer Programs, and the continuation of such programs in the ordinary course of business on a postpetition basis, is imperative to the Debtors' ongoing operations and their continued viability.

21. The necessity of the Customer Programs in the Debtors' industry cannot be overstated and many of the Customer Programs are standard practice. If the Debtors' obligations under the Customer Programs are not honored, the Debtors risk alienating their customers and encouraging them to obtain services from the Debtors' competitors. This is particularly critical, as the Debtors are attempting to increase their customer engagement, frequency, and retention. These efforts will be stymied if customers are unable to take advantage of the very inducements that the Debtors are utilizing to drive customer traffic. The prepetition obligations owed by the Debtors pursuant to the Customer Programs qualify for postpetition payment because if the Debtors do not honor these obligations, the Debtors' hard-earned reputation and brand loyalty will be adversely affected, irreparably harming the Debtors' prospects to maximize value through these chapter 11 cases. *See In re CoServ*, 273 B.R. at 497 (noting that one example

where a debtor-in-possession can only fulfill its fiduciary duty by pre-plan satisfaction of a prepetition claim is "prepetition . . . claims of . . . a customer which, if not honored, could so harm the Debtor's good will as to destroy its going concern value"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (holding that "such a failure to pay and its consequent loss of customer base would impair value of the business on either a going concern or liquidation basis").

22. Simply put, the continuity, viability, and revitalization of the Debtors' businesses is dependent upon the development and maintenance of the loyalty of their customers. The Debtors expect to have sufficient resources available to maintain all of their Customer Programs, to the extent described herein, and to pay their Customer Obligations.

23. Considering the potential loss of competitiveness, goodwill, and relationships, and the resulting negative impact on the Debtors' business and reorganization efforts, the Debtors submit that the requested relief is in the best interests of the Debtors, their estate, and creditors, and therefore the motion should be approved in all respects.

II.    **The Banks Should Be Authorized to Honor and Pay Checks and Electronic Payment Requests in Connection with the Customer Programs.**

24. In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the Customer Obligations, whether such checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments on account of the Customer Obligations. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of the Customer Obligations.

01:19291887.5

9

Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

25. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

### III. Request for a Waiver of Bankruptcy Rule 6003(b)

26. Under Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may authorize the Debtors to satisfy the Customer Obligations because such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

27. As described above, the Customer Programs are integral to the Debtors' continued operations because they are necessary to maintain and build the confidence and goodwill of the Debtors' customers. The Debtors are at a critical juncture at which they must make every effort to retain customer support, drive revenues, and maximize cash flow. The Debtors' inability to honor the Customer Programs could materially impair these efforts and thwart the Debtors' chapter 11 cases before they have had a chance to begin. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief requested on the terms described herein.

### IV. Request for a Waiver of Bankruptcy Rule 6004(h)

28. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

01:19291887.5

the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any delay in the Debtors' ability to continue, and pay, honor, or otherwise satisfy their obligations related to the Customer Programs would be detrimental to the Debtors, their creditors and estates, and would impair the Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

29.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## V.    Reservation of Rights

30.    Nothing in this Motion or the proposed order attached hereto (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

## NOTICE

31.    Notice of this Motion has been provided to: (i) the U.S. Trustee ; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; (v) the Prepetition Secured Parties; and (vi) the lenders under the proposed debtor in possession financing facility. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:19291887.5

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the order substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Dated: October 3, 2016
      Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**
Neil E. Herman (*pro hac vice* pending)
James O. Moore (*pro hac vice* pending)
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

- and –

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

# Order

01:19291887.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GARDEN FRESH RESTAURANT<br>INTERMEDIATE HOLDING, LLC, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 16-12174 (\_\_\_)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. _____** |

**ORDER, PURSUANT TO SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND
1108 OF THE BANKRUPTCY CODE, AUTHORIZING (I) THE DEBTORS
TO HONOR PREPETITION OBLIGATIONS RELATED TO CUSTOMER PROGRAMS
AND OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY
COURSE OF BUSINESS AND (II) BANKS TO HONOR AND PROCESS CHECK AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "Motion")[2] of the Debtors for the entry of an order, (i) authorizing, but not directing, the Debtors, in their business judgment, to continue, maintain, implement new, and/or terminate any of the Customer Programs, and to pay, honor, and otherwise satisfy prepetition obligations related to the Customer Programs in the ordinary course of business and in a manner consistent with past practice, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related to the Customer Programs; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334, and the *Amended*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

01:19291887.5

*Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, but not directed, in their business judgment, to continue, maintain, implement new, and/or terminate the Customer Programs, in the ordinary course of business and in a manner consistent with past practice; provided, however, that if the Debtors at any time during these bankruptcy cases cease to honor gift cards, they shall file a notice of the same with the Court, and serve such notice on the Office of the U.S. Trustee, any official committee appointed in these cases, the Prepetition Secured Parties, the lenders under the proposed debtor in possession financing facility, and any party filing request for service under Bankruptcy Rule 2002.

3. The Debtors are authorized, but not directed, in their business judgment, to pay, honor, and otherwise satisfy (including, without limitation, through setoffs and recoupments) prepetition Customer Obligations relating to the Customer Programs, in the ordinary course of business and in a manner consistent with past practice; *provided*, *however*, that payments to the Gift Card Parties shall not exceed $10,000 and payments on account of the Charitable Giving Programs shall not exceed $200,000, unless otherwise ordered by the Court.

4. The Banks shall be, and hereby are, authorized, when requested by the Debtors in their business judgment, to receive, process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtors' bank accounts on account of the prepetition Customer

Obligations, whether those checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

5.   The Debtors are authorized to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests related to the Customer Obligations dishonored or rejected as a consequence of the commencement of these chapter 11 cases.

6.   Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

7.   The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

8.   Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.   The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

10.   The requirement of Bankruptcy Rule 6004(a) is waived.

11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
_____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE