## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b)(9), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING

Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors to pay prepetition claims held by (a) critical vendors with claims arising under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Critical Vendors") in an aggregate amount not to exceed $1,700,000 (the "503(b)(9) Critical Vendor Cap")[2] and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] The Debtors are seeking the authority to pay up to an additional $1,174,000 in claims arising under section 503(b)(9) of the Bankruptcy Code, which the Debtors believe do not need to be paid in the initial 21 days following the Petition Date pursuant to the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Payment of Prepetition Claims Arising Under (a) the Perishable Agricultural Commodities Act, (b) the Packers and Stockyards Act, and (c) Section 503(b)(9) of the Bankruptcy Code and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* filed contemporaneously herewith.

(b) critical vendors with claims not arising under section 503(b)(9) of the Bankruptcy Code (the "Non-503(b)(9) Critical Vendors" and, together with the 503(b)(9) Critical Vendors, the "Critical Vendors") in an aggregate amount not to exceed $100,000 (the "Non-503(b)(9) Critical Vendor Cap" and, together with the 503(b)(9) Critical Vendor Cap, the "Critical Vendor Caps") and (ii) authorizing the Debtors' banks and financial institutions (collectively, the "Banks") to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing.  The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of John D. Morberg in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[3]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## BACKGROUND

### I.     General

2.     On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.     The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No request has been made for the appointment of a trustee or examiner, and no official committee has been established in these chapter 11 cases.

5.     Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

### II.    Critical Vendors

6.     As of the Petition Date, the Debtors owned and operated 123 restaurants across fifteen (15) states.  To operate these restaurants, the Debtors require a wide variety fresh produce, meat, dairy, beverages, condiments, dry and canned goods, and restaurant accessories.  Raw groceries are typically delivered to the Debtors' central kitchens and restaurants one (1) to six (6) times per week, with some groceries and produce not requiring preparation at the central kitchens shipped directly to stores from regional produce vendors.  If the delivery of products to the Debtors is stopped or delayed for even one day, the Debtors could not operate their restaurants.  Without a full supply of food and beverages, the Debtors would be extremely disadvantaged in a highly competitive market segment and would suffer swift attrition in

customer patronage, which would be difficult, if not impossible, to restore.  The Debtors'

business depends on, among other things, the Debtors' ability to retain their vendors and

maintain their reputation and customer loyalty.  The Debtors need to be able to assure their

customers, vendors, and employees that, notwithstanding the filing of these chapter 11 cases,

they will continue to operate at the highest level.

7.      To identify the Critical Vendors, the Debtors have reviewed their accounts

payable and prepetition vendor lists to identify those creditors most essential to the Debtors'

operations pursuant to the following criteria:  (i) whether certain quality specifications or other

requirements of the Debtors' customers prevent the Debtors from obtaining a vendor's products

or services from alternative sources within a reasonable timeframe; (ii) whether, if a vendor is

not a single-source supplier, the Debtors have sufficient product in inventory to continue their

operations while a replacement vendor is put in place; and (iii) whether a vendor meeting the

foregoing criteria is able or likely to refuse to ship products to the Debtors postpetition if its

prepetition balances are not paid.

### III.    <u>Critical Vendor Claims</u>

8.      It is essential that the Debtors be able to maintain their business relationships

with, and honor outstanding payment obligations to, the Critical Vendors in light of the critical

role that they play in the day-to-day operation of the Debtors' business.  In addition, certain of

the Critical Vendors are entitled to administrative expense priority under section 503(b)(9) of the

Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business

within the 20-day period immediately prior to the Petition Date.  Accordingly, to prevent the

commencement of these chapter 11 cases from causing an unexpected or inopportune

interruption to their business operations, the Debtors are seeking authority, in their sole

discretion, to pay (i) prepetition claims held by 503(b)(9) Critical Vendors (the "503(b)(9) Critical Vendor Claims") up to the 503(b)(9) Critical Vendor Cap and (ii) prepetition claims held by Non-503(b)(9) Critical Vendors (the "Non-503(b)(9) Critical Vendor Claims" and, together with the 503(b)(9) Critical Vendor Claims, the "Critical Vendor Claims") up to the Non-503(b)(9) Critical Vendor Cap.[4] While the Debtors reserve the right to seek Court authority at a later date to increase the Critical Vendor Caps, payment of the amounts specified herein would allow the Debtors to obtain those services most necessary to operating the Debtors' restaurants.

9.    In determining the amount of the Critical Vendor Caps, the Debtors carefully reviewed all of their vendors to determine which vendors could meet the stringent criteria used to identify the universe of potential Critical Vendors.  Consequently, the Critical Vendor Caps represents the Debtors' best estimate of the prepetition claims that should be paid immediately to ensure a continued supply of critical goods and services.

10.    Given the current state of the Debtors' business, the detailed protocol described below for determining whether to make a Critical Vendor payment, the risks associated with non-payment, and the fact that the overwhelming percentage of the Critical Vendor Claims are entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code, the Debtors submit that the Critical Vendor Caps are reasonable and appropriate caps on the expenditure of estate funds to satisfy certain prepetition claims.[5]

---

[4]  The Critical Vendor Claims do not include any claims arising under (i) the Perishable Agricultural Commodities Act or (ii) the Packers and Stockyards Act, which are the subject of a separate motion filed concurrently herewith.

[5]  Nothing in this Motion should be construed as a waiver by the Debtors of their right to contest any invoices of a Critical Vendor under the Bankruptcy Code or applicable non-bankruptcy law.

**IV.**    <u>**Terms and Conditions for Payment of Critical Vendor Claims**</u>

11.    In return for paying the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide favorable trade terms in line with historical practices for the postpetition delivery of goods and services or otherwise continue to supply the Debtors with essential goods and services for the duration of these chapter 11 cases.  The Debtors therefore request authority, but not direction, to condition the payment of Critical Vendor Claims upon the Critical Vendor's written agreement to continue supplying goods or services to the Debtors in accordance with trade terms that are at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place prior to the Petition Date (the "<u>Customary Trade Terms</u>").

12.    The Debtors also reserve the right to negotiate trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the Customary Trade Terms (the "<u>Negotiated Trade Terms</u>") to the extent the Debtors determine, in their reasonable business judgment, that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

13.    The Debtors may elect to condition the payment of Critical Vendor Claims upon such party's agreement to continue supplying goods or services on Customary Trade Terms or Negotiated Trade Terms for the duration of these chapter 11 cases by executing trade agreements (each, a "<u>Trade Agreement</u>").  Such Trade Agreements, once agreed to and accepted by a Critical Vendor, shall be legally binding contractual arrangements governing the commercial trade relationship between the parties as provided therein.

14.     The Debtors also seek authority, but not direction, to pay the claim of a Critical Vendor that threatens to withhold goods or services unless its prepetition claim is paid if the Debtors conclude, in their reasonable business judgment, that such payment is necessary for the preservation of the Debtors' estates; *provided*, *however*, that any such payments will be subject to the Critical Vendor Cap, as applicable.  Additionally, the Debtors request that, if a Critical Vendor accepts payment pursuant to an order granting the relief requested in this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms or Negotiated Trade Terms (regardless of whether a Trade Agreement has been executed), (i) any payment on account of a Critical Vendor Claim may be deemed, in the Debtors' reasonable business judgment, to be an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made.  If there exists an outstanding postpetition balance due from the Debtors to such vendor, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and such Critical Vendor will be required to repay the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## RELIEF REQUESTED

15.     The Debtors seek entry of an order (i) authorizing, but not directing, the Debtors to pay the Critical Vendors Claims up to the applicable Critical Vendor Cap and (ii) authorizing the Banks to honor and pay all checks and electronic transfer requests for payment of such Critical Vendor Claims.

**BASIS FOR RELIEF**

I.    **Paying Critical Vendor Claims Is in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

16.    Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business.  Indeed, a debtor in possession has a duty to protect and preserve the value of its estate, and may pay prepetition claims if necessary for the debtor to fulfill that duty.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").  The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate."  *Id.*

17.    The *CoServ* court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtors' fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

18.    Here, payment of the Critical Vendor Claims meets each prong of the *CoServ* test. First, as described in the protocol above, the Debtors have narrowly tailored the definition of "Critical Vendors" to encompass only those vendors that provide essential goods or services and may refuse to provide those goods or services absent payment of their prepetition claims. Second, due to the difficulty associated with finding alternate sources for the critical goods and services, the potential harm and economic disadvantage that would stem from the failure of any

of the Critical Vendors to perform, as further described above, is disproportionate to the amount of any Critical Vendor Claim sought to be paid.  Third, with respect to each of the Critical Vendor Claims, the Debtors have examined other legal options short of payment of such Critical Vendor Claims and have determined that there exists no practical or legal alternative to payment of the Critical Vendor Claims.

## II.    Payment of the Critical Vendor Claims Is Appropriate Under Section 363(b).

19.    Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1). Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief.  *See Comm. of Equity Sec. Holders v. Lionel Corp.  (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (stating that a "debtor must articulate some business justification, other than mere appeasement of major creditors").

20.    Once a debtor has articulated a valid business justification, there "'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  This business judgment rule applies in chapter 11 cases like these.  *Id.* (noting that the "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11").

21.     As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that the goods and services provided by the Critical Vendors are vital to the Debtors' continuing business operations.  As such, the failure to honor their prepetition obligations to the Critical Vendors could have a significant adverse effect on the Debtors' continued operation and their ability to maximize the value of their estates.  Accordingly, the preservation and protection of the Debtors' business through ongoing relationships with the Critical Vendors provides a sufficient business justification for payment of Critical Vendor Claims, even if such payments were deemed to be outside the ordinary course of business.  *See Ionosphere Clubs*, 98 B.R. at 17.

22.     The Debtors, therefore, seek authorization under section 363(b) of the Bankruptcy Code to pay the Critical Vendor Claims.

III.     **The Doctrine of Necessity and Section 105(a) of the Bankruptcy Code Further Support Payment of the Critical Vendor Claims.**

23.     Finally, the Debtors' proposed payment of the Critical Vendor Claims also should be authorized pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity."  Section 105(a) of the Bankruptcy Code authorizes the Court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  Under the doctrine of necessity, the Court can authorize payment of certain prepetition claims prior to the completion of the reorganization process when the payment of such claims is

necessary to the reorganization.[6]  *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581

(3d Cir. 1981) (authorizing payment of creditors' claims under "necessity of payment" doctrine);

*In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (stating that the necessity of

payment doctrine permits "immediate payment of claims of creditors where those creditors will

not supply services or materials essential to the conduct of the business until their pre-

reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del.

1999) (stating that where the debtor cannot survive absent payment of certain prepetition claims,

the doctrine of necessity should be invoked to permit payment); *In re Columbia Gas Sys., Inc.*,

171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that the debtors "may pay pre-petition

claims that are essential to continued operation of business").

24.     For the reasons set forth herein, and in light of the critical need for the Debtors to

preserve the value of their business to effect a successful restructuring, payment of the Critical

Vendor Claims is essential to the Debtors' chapter 11 cases.  As set forth in more detail above, it

would likely be expensive and difficult, if not impossible, for the Debtors to find alternative

sources for the goods and services currently provided by the Critical Vendors.  In addition, any

interruption in the delivery of products to the Debtors would impair the Debtors' ability to

operate high-quality restaurants and create the risk customer attrition.  Therefore, payment of the

---

[6]  The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equitable powers and its statutory authority under section 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286 (1882), in affirming the lower court's authorization of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See id.* at 309–14.  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger.  See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

Critical Vendor Claims should be authorized pursuant to section 105(a) of the Bankruptcy Code

and the doctrine of necessity.

**IV.     Payment of the 503(b)(9) Critical Vendor Claims Now Will Have Little to No Effect
on Creditor Recoveries In These Chapter 11 Cases.**

25.     As stated previously, an overwhelming majority of the Critical Vendor Claims are

entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.  Because such

claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, the Debtors

must pay the claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A)

(requiring payment in full of claims entitled to priority).  Although section 503(b)(9) of the

Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have

the discretion to allow for distributions to administrative claimants prior to confirmation if the

debtor has the ability to pay and there is a need to pay.  Indeed, nothing in the Bankruptcy Code

prohibits the Debtors from paying such claims sooner if they choose to do so, or the Court from

exercising its discretion to authorize the postpetition payment of such obligations prior to

confirmation of a chapter 11 plan.  Thus, payment of the 503(b)(9) Critical Vendor Claims only

affects the timing, but not the amount, of payment.  As a result, the Debtors respectfully submit

that they should have the authority (but not the direction) to pay such claims in an amount not to

exceed the 503(b)(9) Critical Vendor Cap.

26.     Since the enactment of section 503(b)(9) of the Bankruptcy Code, courts in this

jurisdiction have exercised their discretion and have routinely authorized the payment of

prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11

case.  *See, e.g., In re Trump Entertainment Resorts, Inc.*, Case No. 14-12103 (KG) (Bankr. D.

Del. Sept. 10, 2014 (interim order,) and Oct. 6, 2014 (final order)).  Indeed, in granting a request

for similar relief, at least one judge in this District asked an objecting United States Trustee,

"[a]rguably, would you agree that the debtor would be able to pay the 503(b)(9) claims without Court approval?"  Transcript of Hearing Held on Oct. 31, 2006, at 24:14-16, *In re Dura Auto.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) (approving payment of claims under section 503(b)(9) of the Bankruptcy Code as part of "first day" relief).

## V.    Request for Authority for Banks to Honor and Pay Checks in Connection Herewith

27.    In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of obligations described herein.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

28.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

## VI.    Request for Finding of Satisfaction of Bankruptcy Rule 6003(b)

29.    Under Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may authorize the Debtors to satisfy the Critical Vendor Claims because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2

(Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

30.     As described above and in the First Day Declaration, the continuity and viability of the Debtors' business operations relies heavily on the uninterrupted delivery of essential food, products, and supplies.  The failure of any Critical Vendor to deliver essential food, products, or supplies to the Debtors would have immediate and detrimental consequences to the Debtors' businesses and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders.  The Debtors cannot risk even the perception that their restaurants will offer anything but the highest level of food and beverage quality and quantity for the duration of these chapter 11 cases.  Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Critical Vendors is critical to their continued operations and greatly increases the likelihood of successfully prosecuting these chapter 11 cases.

31.     Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and that, therefore, Bankruptcy Rule 6003 is satisfied.

## VII.    Request for a Waiver of Bankruptcy Rule 6004(h)

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as any delay in satisfying the Critical Vendor Claims would jeopardize the Debtors' business operations and their efforts in connection with these chapter 11 cases, to the detriment of their estates and creditors.

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## VIII.    Reservation of Rights

34.     Nothing in this Motion or the proposed order attached hereto (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Critical Vendor; or (iv) shall be construed as a promise to pay a claim.

## NOTICE

35.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; (v) the Prepetition Secured Parties; (vi) the lenders under the proposed debtor in possession financing facility; and (vii) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:19217980.5

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the order substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Dated: October 3, 2016        **MORGAN, LEWIS & BOCKIUS LLP**
     Wilmington, Delaware        Neil E. Herman (*pro hac vice* pending)
                                         James O. Moore (*pro hac vice* pending)
                                         101 Park Avenue
                                         New York, New York 10178
                                         Telephone: (212) 309-6000

                                         - and –

                                         **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

                                         */s/ Kenneth J. Enos*
                                         Michael R. Nestor (No. 3526)
                                         Kenneth J. Enos (No. 4544)
                                         Ian J. Bambrick (No. 5455)
                                         1000 N. King Street
                                         Wilmington, Delaware 19801
                                         Telephone:  (302) 571-6600

                                         *Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

### ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b)(9), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING

Upon consideration of the motion (the "Motion")[2] of Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") for the entry of an order, pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors to pay the Critical Vendor Claims held by Critical Vendors in an aggregate amount not to exceed the applicable Critical Vendor Cap and (ii) authorizing the Banks to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy amounts on account of 503(b)(9) Critical Vendor Claims; *provided*, *however*, that such payments shall not exceed $1,700,000 (the "503(b)(9) Critical Vendor Cap") unless otherwise ordered by the Court.

3.      The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy amounts on account of Non-503(b)(9) Critical Vendor Claims; *provided*, *however*, that such payments shall not exceed $100,000 (the "Non-503(b)(9) Critical Vendor Cap" and, together with the 503(b)(9) Critical Vendor Cap, the "Critical Vendor Caps") unless otherwise ordered by the Court.

4.      The Debtors are authorized, but not directed, to condition the payment of Critical Vendor Claims upon such Critical Vendor's written agreement to continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place prior to the Petition Date (the "Customary Trade Terms").

5.      The Debtors are authorized, but not directed, to negotiate trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the

Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors determine, in their reasonable business judgment, that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

6.    The Debtors are authorized, but not directed, to condition the payment of Critical Vendor Claims upon such Critical Vendor's agreement to continue supplying goods or services on Customary Trade Terms or Negotiated Trade Terms for the duration of these chapter 11 cases by executing trade agreements (each a "Trade Agreement").   Such Trade Agreements, once agreed to and accepted by a Critical Vendor, shall be legally binding contractual arrangements governing the commercial trade relationship between the parties as provided therein.

7.    The Debtors are authorized, but not directed, to pay the claim of a Critical Vendor that threatens to withhold goods or services unless its prepetition claim is paid if the Debtors conclude, in their reasonable business judgment, that such payment is necessary for the preservation of the Debtors' estates; *provided*, *however*, that any such payments will be subject to the applicable Critical Vendor Cap.

8.    If a Critical Vendor accepts payment pursuant to this Order and thereafter does not continue to provide goods and services on Customary Trade Terms or Negotiated Trade Terms (regardless of whether a Trade Agreement has been executed), then (i) any payment on account of a Critical Vendor Claim shall be deemed, in the Debtors' reasonable business judgment, to be an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request, and (ii) upon recovery of the payment by the Debtors, the Critical Vendor Claim shall be reinstated as if the payment had not been made.  If there exists an outstanding postpetition balance due from the Debtors to a Critical Vendor, the Debtors may

elect to recharacterize and apply any payment made pursuant to this Order to such outstanding postpetition balance, and the Debtors may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor.

9.      The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, their accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of Critical Vendor Claims.

10.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Critical Vendor; or (iv) shall be construed as a promise to pay a claim.

11.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

12.      The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

13.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

14.     All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
      Wilmington, Delaware

_____

United States Bankruptcy Judge