## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibits A and B (the "Proposed Interim Order" and the "Proposed Final Order," respectively), pursuant to sections 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business as such claims come due, all prepetition claims arising under (a) the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–499t ("PACA"), (b) the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181–231 ("PASA"), and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

(c) section 503(b)(9) of the Bankruptcy Code, and (ii) authorizing the Debtors' banks and financial institutions (collectively, the "Banks") to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing.    The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of John D. Morberg in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.      The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

4.     No request has been made for the appointment of a trustee or examiner, and no official committee has been established in these chapter 11 cases.

5.     Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

6.     As described in detail below, third parties holding claims under PACA or PASA may be able to assert liens against the Debtors' assets.  In addition, due to the nature of the Debtors' businesses, certain vendors may possess claims under section 503(b)(9) of the Bankruptcy Code.  It is critical to the Debtors' business operations that the Debtors continue to receive goods from these vendors.  The Debtors believe that without the relief requested herein, many of the vendors may cease the delivery of goods, which could have devastating consequences for the Debtors' business operations and their efforts in connection with these chapter 11 cases.

## RELIEF REQUESTED

7.     By this Motion, the Debtors request entry of the Proposed Interim Order and the Proposed Final Order (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay all prepetition claims arising under PACA, PASA, and section 503(b)(9) of the Bankruptcy Code in the ordinary course of business, and (ii) authorizing the Banks to honor and pay all checks and electronic transfer requests for payment of such Critical Vendor Claims.[3]

---

[3] Some states have enacted statutes granting protection similar to that of PACA.  *See, e.g.*, Minn. Stat. §§ 27.01–.19. Accordingly, references to PACA, PASA, and PACA/PASA Claims (as defined below) in this Motion are also intended to refer to those state statutes and the goods, claims, and claimants protected thereunder.  The relief requested in the Motion with respect to PACA/PASA Claims is also requested with respect to the goods, claims, and claimants under those state statues having an effect and purpose similar to PACA or PASA, as applicable.

I.      **PACA Claims**

8.      To ensure that the Debtors continue to receive a constant supply of fresh fruits and vegetables postpetition, the Debtors seek authority, but not direction, in their sole discretion, to continue to pay in the ordinary course of business and consistent with their historical practices, certain claims (the "PACA Claims") of those vendors that supply the Debtors with fruits and vegetables (the "PACA Vendors").

9.      Congress enacted PACA to regulate the sale of "perishable agricultural commodities." 7 U.S.C. § 499a; *see also Endico Potatoes, Inc. v. CIT Grp./Factoring*, 67 F.3d 1063, 1067 (2d Cir. 1995). Under PACA, the term "perishable agricultural commodity" is generally defined as "fruits and fresh vegetables of every kind and character" "whether or not frozen or packed in ice." 7 U.S.C. § 499a(b)(4). PACA provides various protections to fresh fruit and vegetable sellers, including the establishment of a statutory constructive trust (a "PACA Trust"), consisting of a purchaser's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products (collectively, the "PACA Trust Assets"). *See* 7 U.S.C. § 499e(c)(2). PACA Trust Assets are preserved as a non-segregated floating trust and may be commingled with non-trust assets. However, courts in this district and other districts have consistently held that PACA Trust Assets are not property of a debtor's estate. *See Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Estate)*, 405 B.R. 694, 697 (Bankr. D. Del. 2009); *In re Long John Silver's Rests., Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *accord Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

10.     PACA requires that certain procedural steps be taken by a seller of perishable agricultural commodities in order to preserve its rights as a trust beneficiary. Specifically, a

PACA Vendor must provide written notice (a "PACA Notice") to the purchaser of such goods of its intent to preserve the benefits of the PACA Trust. *See Merrill Farms Corp. v. H.R. Hindle & Co. (In re H.R. Hindle & Co.)*, 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993); *Debruyn Produce Co. v. Richmond Produce Co. (In re Richmond Produce Co.)*, 112 B.R. 364 368–69 (Bankr. N.D. Cal. 1990). Written notice under PACA may be accomplished by either (i) including the statutorily mandated language on the face of the vendor's invoices or (ii) providing written notice to the purchaser of the PACA goods within thirty (30) days after the time payment is due. Beneficiaries of a PACA Trust that adhere to the statutory notice requirements are entitled to prompt payment from the PACA Trust Assets ahead of secured and unsecured creditors of a debtor's estate. *See "R" Best Prod., Inc. v. 646 Corp.*, No. 00-CV-8536, 2002 WL 31453909, at *1 (S.D.N.Y. Oct. 31, 2002). However, a PACA Vendor's failure to comply with the notice requirements renders its claim a general unsecured claim in a debtor's chapter 11 case. *See In re H.R. Hindle*, 149 B.R. at 786.

11.     PACA's application is limited to sales to commission merchants, brokers, and dealers. 7 U.S.C. § 499e(c). "Dealer," as such term is defined in PACA, is "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b).

12.     The Debtors believe that a certain portion of the goods purchased from certain of the vendors may qualify as "perishable agricultural commodit[ies]" under PACA. As a result, insofar as those vendors abide by the notice requirements of PACA, such vendors will be eligible to assert PACA Claims granting them priority ahead of all other secured and unsecured creditors in the Debtors' chapter 11 cases. Accordingly, payment of PACA Claims at this time will not

prejudice or affect the amount available for distributions to other creditors of the Debtors.  To ensure that the supply of fresh produce continues unimpeded, it is imperative that the Debtors be authorized to pay all prepetition and postpetition PACA Claims in the ordinary of business and consistent with their historical practices.

13.    As of the Petition Date, the Debtors estimate they owe holders of PACA Claims approximately $1,430,000 in the aggregate for PACA goods delivered prior to the Petition Date; the Debtors expect to be invoiced for substantially all of this amount within twenty-one (21) days following the Petition Date.

14.    Any PACA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority, against the Debtors, their property, their estates, and any PACA Trust Assets, but only to the extent that payment has been received by such PACA Vendor on account of its PACA Claim.

## II.    The PASA Claims

15.    The Debtors also regularly purchase meat, poultry, and other similar products from vendors (the "PASA Vendors" and, together with the PACA Vendors, the "PACA/PASA Vendors") that may be eligible to assert claims under PASA (the "PASA Claims" and, together with the PACA Claims, the "PACA/PASA Claims").  Much like PACA, PASA protects unpaid sellers of livestock or poultry by imposing a statutory trust (the "PASA Trust" and, together with the PACA Trust, the "PACA/PASA Trusts") on a buyer's entire inventory of livestock or poultry, as applicable, and any related proceeds (the "PASA Trust Assets" and, together with the PACA Trust Assets, the "PACA/PASA Trust Assets").  *See* 7 U.S.C. §§ 196, 197.  This statutory trust scheme is virtually identical to that under PACA.  Indeed, "PACA's trust provision was

modeled on that of [PASA]" in the first place. *In re Magic Rests., Inc.*, 205 F.3d 108, 115 n.8 (3d Cir. 2000); *see also In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The legislative history expressly notes that the PACA trust was modeled on the trust amendments to the Packers and Stockyards Act . . . ."). PASA Trust Assets are not property of a debtor's estate; thus, as with PACA Claims, claims based on a PASA statutory trust must be satisfied ahead of the claims of any secured creditors holdings liens on a buyer's inventory or accounts receivable. *See Bast v. Orange Meat Packing Co. (In re G&L Packing Co.)*, 20 B.R. 789, 801 (Bankr. N.D. 1982) ("Congress intended unpaid cash sellers to satisfy their claims from the packer's assets (inventoried livestock delivered by the cash seller and accounts receivable and other proceeds from the sale of such livestock) before satisfying any (Uniform Commercial Code) Article 9 perfected security interest in those assets."); *First State Bank of Miami v. Gotham Provision Co. (In re Gotham Provision Co.)*, 669 F.2d 1000, 1010 (5th Cir. 1982) ("Where the packer has given a lender a security interest in inventories or receivables that are subject to the [PASA] trust, the unpaid cash sellers have priority over those assets and may recover the proceeds of those receivables to the extent of the outstanding balance on the cash sales.").

16.    The Debtors believe that a certain portion of the goods purchased from vendors may qualify for treatment under PASA. As a result, insofar as those PASA Vendors abide by the notice requirements of PASA, such vendors will be eligible to assert PASA Claims granting them priority ahead of all other secured and unsecured creditors in the Debtors' chapter 11 cases. Accordingly, payment of PASA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtors. To ensure that the supply of meat, poultry, and other similar products continues unimpeded, it is imperative that the Debtors be

authorized to pay all prepetition and postpetition PASA Claims in the ordinary of business and consistent with their historical practices.

17.     As of the Petition Date, the Debtors estimate there are no amounts outstanding for PASA goods delivered prior to the Petition Date.  However, out of an abundance of caution, the Debtors are nevertheless seeking authority to pay up to $50,000 for any PASA Claims that may be outstanding as of the Petition Date.

18.     Any PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PASA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority, against the Debtors, their property, their estates, and any PASA Trust Assets, but only to the extent that payment has been received by such PASA Vendor on account of its PASA Claim.

### III.    Section 503(b)(9) Claims

19.     Certain vendors (the "Section 503(b)(9) Claimants" and, together with the PACA/PASA Vendors, the "Vendors") may be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business within the 20-day period immediately prior to the Petition Date. Because the Debtors must pay such claims (the "Section 503(b)(9) Claims" and, together with the PACA/PASA Claims, the "Claims") in full to confirm a plan of reorganization, the payment of these Section 503(b)(9) Claims merely affects the timing of such payments, and not the amount.  The Debtors seek authority, but not direction, in accordance with any order(s) of this Court approving the Debtors' debtor in possession financing facility and the use of cash collateral and any budget in connection therewith, to pay the Section 503(b)(9) Claims in the ordinary course of business to the extent necessary to preserve the going-concern value of the Debtors' chapter 11 estates.  However, as with the rest of the Claims, to the extent that the

Debtors make any payments with respect to such a claim, no such payment shall be deemed a waiver of the rights of the Debtors and their estates to contest the validity and amount of any such claim.

20.     The Debtors estimate approximately $1,174,000 in Section 503(b)(9) Claims as of the Petition Date; the Debtors expect to be invoiced for substantially all of this amount within 21 days following the Petition Date.[4]

21.     In sum, pursuant to this Motion, the Debtors are requesting authority, but not direction, from the Court to pay the Claims, subject to the following caps:

| | |
|---|---|
| PACA Claims | $1,430,000 |
| PASA Claims | $50,000 |
| Section 503(b)(9) Claims | $1,174,000 |

22.     Subject to the terms set forth below, the Debtors propose to condition the payment of the Claims on the agreement of individual Vendors to continue to provide goods to the Debtors during the pendency of these chapter 11 cases on the most favorable terms that existed prior to the Petition Date (the "Historical Trade Terms"), unless this requirement is waived by the Debtors, in their sole discretion.

23.     In the event that any Vendor that has received payment for its Claim refuses to continue to provide goods on an uninterrupted basis to the Debtors in accordance with (i) the terms and provisions of any order granting the relief requested herein, (ii) Historical Trade

---

[4]  In the aggregate, the Debtors estimate that they are there is approximately $2,874,000 in claims arising under section 503(b)(9) of the Bankruptcy Code.  However, they are seeking authority to pay $1,800,000 of this amount under the *Debtors' Motion for Entry of an Order, Pursuant to Sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, (i) Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* (the "Critical Vendor Motion"), filed contemporaneously herewith, as 503(b)(9) Critical Vendor Claims (as defined in the Critical Vendor Motion)

Terms, or (iii) such other terms agreed upon by the Debtors and such Vendor, the Debtors propose that, without further order of the Court and in their sole discretion, they be authorized to deem the payments made to any such Vendor to have been in payment of any then-outstanding postpetition claims of such Vendor. If this situation arises, the previously paid Claims of the Vendor shall be reinstated as Claims in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Vendor. To the extent that the payments made to the Vendor on account of the previously paid Claims exceed the postpetition amounts then owed to such Vendor, the Debtors and their estates reserve all rights to recover such payments.

## BASIS FOR RELIEF

### I.    Payment of the PACA/PASA Claims Is Warranted Under the Doctrine of Necessity.

24.    Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages). When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code.

25.    Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have

authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

26.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

27.     In addition to the authority granted a debtor in possession under sections 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286 (1882).  Since *Miltenberger*, courts

have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

28.    In *In re Lehigh*, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. at 824–25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

29.    The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11."  *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy

Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when necessary for rehabilitation"); Collier on Bankruptcy ¶ 105.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).  The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, and will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.

30.    The authority, but not direction, to satisfy the PACA/PASA Claims in the initial days of these chapter 11 cases without disrupting their business operations will send a clear signal to the marketplace, including key suppliers and customers, that the Debtors are willing and, importantly, able to conduct business as usual during their chapter 11 cases.

31.    The Debtors' operations also require the seamless coordination of many unrelated third parties at every stage in the supply chain.  Collectively, the Debtors' supply chain ensures that the Debtors receive all of the food, products, and supplies necessary to operate their businesses and provide their customers with the high-quality food expected under their brands. Any significant disruption in the Debtors' supply chain, such as a vendor halting delivery of certain necessary goods could result in the Debtors' not having sufficient food, products, and

supplies to operate their businesses.  Given the highly-competitive restaurant industry, such a result could cause a devastating impact on the Debtors' businesses and significantly impair their restructuring efforts.

## II     Payment of Allowed PACA/PASA Claims in the Ordinary Course of Business Is Warranted.

32.     The prompt and full payment of PACA/PASA Claims should be authorized by this Court.  As described above, assets governed by PACA and PASA do not constitute property of the Debtors' estates.  *See, e.g., In re CFP Liquidating Estate*, 405 B.R. at 697 (PASA trust assets are excluded from debtor's estate); *Long John Silver's*, 230 B.R.at 32 (PACA trusts are excluded from property of the estate).  As a result, the distribution of assets to the holders of PACA/PASA Claims falls outside the priority scheme set forth in the Bankruptcy Code, and such holders are entitled to payment from the PACA/PASA Trusts ahead of the Debtors' other creditors.  *See, e.g., In re Magic Rests.*, 205 F.3d at 110; *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377–78 (3d Cir. 1994).  The Debtors' requested relief thus affects only the timing of the PACA/PASA Claims payment, and will not prejudice the recovery of other creditors.  Moreover, the disposition of the PACA/PASA Trust Assets is subject to the jurisdiction of the bankruptcy court.  *See Monterey Mushrooms, Inc. v. Carolina Produce Distribs., Inc.*, 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v. United Fruit & Produce Co.*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988).  Accordingly, the relief requested herein does not prejudice the Debtors' creditors or any party in interest in these chapter 11 cases.

33.     Furthermore, payment of allowed PACA/PASA Claims will inure to the benefit of the Debtors' estates by preserving goodwill between the Debtors and the PACA/PASA Vendors. Any delays in satisfying amounts owed to PACA/PASA Vendors could adversely affect the

Debtors' ability to obtain fresh produce, meat, poultry, and other similar goods, thereby undercutting the Debtors' efforts in connection with these chapter 11 cases.  Failing to pay allowed PACA/PASA Claims in the ordinary course of business could subject the Debtors to numerous claims and adversary proceedings, including motions by PACA/PASA Vendors for relief from the automatic stay or injunctive relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors, their management team, and their professional advisors.

34.    Lastly, in certain circumstances, officers or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA and PASA.  *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); *Morris Okun*, 814 F. Supp. at 349 (noting that PASA, like PACA, provides that "any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets"); *see also Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (noting that a court determining personal liability under PACA will inquire as to (i) whether the individual's involvement with the corporation was sufficient to establish legal responsibility and (ii) whether the individual, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors).  Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors may be subject to lawsuits during the pendency of these chapter 11 cases.  Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors in their attempt to implement a successful reorganization strategy and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents,

01:19216320.10

employment agreements, and applicable laws, to the detriment of all of the Debtors' stakeholders.

### III.    The Court Should Allow the Debtors to Pay Section 503(b)(9) Claims in the Ordinary Course of Business Following the Entry of the Proposed Final Order.

35.    As noted above, certain Vendors may be entitled to request an administrative expense priority claim under section 503(b)(9) of the Bankruptcy Code to the extent the Debtors received goods in the ordinary course of business within the 20-day period immediately prior to the Petition Date.  Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, the Debtors must pay the claims in full to confirm a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority).  Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay.  Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or this Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan.

36.    Thus, payment of claims arising under section 503(b)(9) affects the timing, but not the amount, of such payment.  As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of these chapter 11 cases, to the extent necessary to preserve the going-concern value of the chapter 11 estates following the entry of the Proposed Final Order.  Since the enactment of section 503(b)(9) of the Bankruptcy Code, courts in this jurisdiction have exercised their discretion and have authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11 case.  *See, e.g., In re Aspect*

*Software Parent, Inc.*, Case No. 16-10597 (MFW) (Bankr. D. Del. Apr. 1, 2016).  Indeed, in granting a request for similar relief, at least one judge in this District asked an objecting United States Trustee, "[a]rguably, would you agree that the debtor would be able to pay the 503(b)(9) claims without Court approval?"  Hr'g Tr. at 24:14-16, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) (approving payment of claims under section 503(b)(9) of the Bankruptcy Code as part of "first day" relief).

37.    As explained above, it is critical to the Debtors' chapter 11 efforts that they continue to receive goods from the Vendors on an uninterrupted basis throughout the chapter 11 process.  The Debtors believe that without the relief requested herein, many Vendors may cease delivering goods to the Debtors, which could have devastating consequences for the Debtors and their estates.

38.    Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

**IV.    Request for Authority for Banks to Honor and Pay Checks in Connection Herewith**

39.    In addition, by this Motion, the Debtors request that their Banks be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks presented for payment of, and to  honor all fund transfer requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of obligations described herein.  Accordingly, the Debtors

believe that checks other than those relating to authorized payments will not be honored inadvertently.

40.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

## V.    Request for a Finding of Satisfaction of Bankruptcy Rule 6003(b)

41.    Under Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may authorize the Debtors to satisfy the Claims because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

42.    As described above and in the First Day Declaration, the continuity and viability of the Debtors' business operations relies heavily on the uninterrupted delivery of essential food, products, and supplies.  The failure of any Vendor to deliver essential food, products, or supplies to the Debtors would have immediate and detrimental consequences to the Debtors' businesses and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders.  The Debtors cannot risk even the perception that their restaurants will offer anything but the highest level of food and beverage quality and quantity for the duration of these chapter 11 cases. Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Vendors is critical to their continued operations and greatly increases the likelihood of successfully prosecuting these chapter 11 cases.

43.     Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and that, therefore, Bankruptcy Rule 6003 is satisfied.

## VI.    Request for a Waiver of Bankruptcy Rule 6004(h)

44.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), as any delay in satisfying the Claims would jeopardize the Debtors' business operations and their efforts in connection with these chapter 11 cases, to the detriment of their estates and creditors.

45.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Interim Order and the Proposed Final Order.

## VII.    Reservation of Rights

46.     Nothing in the Proposed Interim Order, the Proposed Final Order, or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

**NOTICE**

47.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; (v) the Prepetition Secured Parties; (vi) the lenders under the proposed debtor in possession financing facility; and (vii) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and the Proposed Final Order, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Dated:  October 3, 2016
      Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**

Neil E. Herman (*pro hac vice* pending)
James O. Moore (*pro hac vice* pending)
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

- and -

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

*Proposed Counsel to the Debtors and Debtors in
Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

**INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Upon consideration of the motion (the "Motion")[2] of Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order, pursuant to sections 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay (a) PACA Claims, (b) PASA Claims, and (c) Section 503(b)(9) Claims in the ordinary course of business as such claims come due and (ii) authorizing the Banks to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376).  The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED, on an interim basis, as set forth herein.

2.      Prior to entry of the final order on the Motion, the Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PACA Claims in the ordinary course of business in an aggregate amount not to exceed $1,300,000.

3.      The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PASA Claims in the ordinary course of business in an aggregate amount not to exceed $50,000.

4.      Any PACA/PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all PACA/PASA claims of whatever type, kind, or priority against the Debtors, their property, their estates, and any PACA/PASA Trust Assets, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

5.      Nothing in this Order impairs the rights of holders of PACA or PASA Claims to enforce their rights under PACA or PASA consistent with applicable law, including, but not limited to, section 362 of the Bankruptcy Code, or to seek redress from the Court with respect to their rights under PACA or PASA.

01:19216320.10

6.      That portion of the Motion seeking authority to pay claims arising under section 503(b)(9) of the Bankruptcy Code shall be addressed at the final hearing on this Motion.  The Debtors shall not pay or otherwise satisfy any Section 503(b)(9) Claims prior to entry of a final order on the Motion or another order of the Court which authorizes such payment.

7.      In the event that any Vendor that has received payment for its Claim refuses to continue to provide goods and services, as applicable, on an uninterrupted basis, to the Debtors in accordance with (i) the terms and provisions of this Order, (ii) Historical Trade Terms, or (iii) such other terms agreed upon by the Debtors and such Vendor, without further order of this Court and in their sole discretion, the Debtors shall be authorized to deem the payments made to any such Vendor to have been in payment of any then-outstanding postpetition claims of such Vendor.  If this situation arises, the previously paid prepetition Claims of the Vendor shall be reinstated as prepetition Claims.  To the extent that the payments made to the Vendor on account of the previously paid Claims exceed the postpetition amounts then owed to such Vendor, all rights of the Debtors and their estates to recover such payments shall be reserved.

8.      The Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

9.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive,

or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

10.    The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.    The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

12.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.    A final hearing on the relief sought in the Motion shall be conducted on _____, 2016, at _____ ____.m. (ET).  Any objections to the Motion and to entry of the Final Order must be filed by _____, 2016, at 4:00 p.m. (ET) (the "Objection Deadline") and served so that it is received by the following parties on or before the Objection Deadline:  (i) Garden Fresh Restaurant Intermediate Holding, LLC, 15822 Bernardo Center Drive, Suite A, San Diego, California 92127 (Attn: Michael Dorsey); (ii) proposed co-counsel to the Debtors, Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178 (Attn: Elaine V. Fenna, Esq.), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Travis G. Buchanan, Esq.); (iii) counsel to the TLA Lenders and the TLA Agent, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067 (Attn: Michael L. Tuchin, Esq. and David M. Guess, Esq.), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.); and (iv) counsel to the TLB Lenders, Stroock & Stroock & Lavan

LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Jayme T. Goldstein, Esq. and Daniel P. Ginsberg, Esq.) and Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.). If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.

14.    All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
      Wilmington, Delaware       _____

                        United States Bankruptcy Judge

## EXHIBIT B

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. _____** |

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

Upon consideration of the motion (the "Motion")[2] of Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order, pursuant to sections 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a), and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay (a) PACA Claims, (b) PASA Claims, and (c) Section 503(b)(9) Claims in the ordinary course of business as such claims come due and (ii) authorizing the Banks to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED, on a final basis, as set forth herein.

2.      The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PACA Claims in the ordinary course of business in an aggregate amount not to exceed $1,430,000.

3.      The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid PASA Claims in the ordinary course of business in an aggregate amount not to exceed $50,000.

4.      Any PACA/PASA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all PACA/PASA claims of whatever type, kind, or priority against the Debtors, their property, their estates, and any PACA/PASA Trust Assets, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

5.      Nothing in this Order impairs the rights of holders of PACA or PASA Claims to enforce their rights under PACA or PASA consistent with applicable law, including, but not limited to, section 362 of the Bankruptcy Code, or to seek redress from the Court with respect to their rights under PACA or PASA.

01:19216320.10

6.      The Debtors are authorized, in their sole discretion, to pay or otherwise satisfy all valid Section 503(b)(9) Claims, in the ordinary course of business in an aggregate amount not to exceed $1,174,000, with the consent of the lenders under the proposed debtor in possession financing facility.

7.      In the event that any Vendor that has received payment for its Claim refuses to continue to provide goods and services, as applicable, on an uninterrupted basis, to the Debtors in accordance with (i) the terms and provisions of this Order, (ii) Historical Trade Terms, or (iii) such other terms agreed upon by the Debtors and such Vendor, without further order of this Court and in their sole discretion, the Debtors shall be authorized to deem the payments made to any such Vendor to have been in payment of any then-outstanding postpetition claims of such Vendor.  If this situation arises, the previously paid prepetition Claims of the Vendor shall be reinstated as prepetition Claims.  To the extent that the payments made to the Vendor on account of the previously paid Claims exceed the postpetition amounts then owed to such Vendor, all rights of the Debtors and their estates to recover such payments shall be reserved.

8.      The Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

9.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive,

01:19216320.10

3

or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against a Vendor; or (iv) shall be construed as a promise to pay a claim.

10.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     All time periods referenced in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  _____, 2016
              Wilmington, Delaware          _____

                                            United States Bankruptcy Judge