## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING
CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING
USE OF PREPETITION BANK ACCOUNTS AND EXISTING CHECK STOCK,
(III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN INTERIM
BASIS, (IV) AUTHORIZING THE CONTINUATION OF INTERCOMPANY
TRANSACTIONS AND GRANTING ADMINISTRATIVE EXPENSE STATUS TO
CERTAIN POSTPETITION INTERCOMPANY CLAIMS AND (V) MAINTAINING
THE ABILITY TO USE DEBIT, WIRE AND ACH PAYMENTS**

Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated

debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby

submit this motion (the "Motion") for entry of an order substantially in the form attached hereto

as Exhibit A pursuant to sections 105, 345, 363 and 503 of title 11 of the United States Code, 11

U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2015-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (i) authorizing and approving the Debtors' continued use of their

existing cash management system, (ii) authorizing the Debtors to continue to use their prepetition

bank accounts (the "Bank Accounts") and existing check stock, (iii) waiving the requirements of

11 U.S.C. § 345(b) on an interim basis with respect to the Debtors' deposit practices,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

(iv) authorizing the continuation of intercompany transactions and granting administrative expense status to certain postpetition intercompany claims between and among the Debtors and (v) maintaining the ability to use debit, wire and ACH payments.  In support of this Motion, the Debtors rely upon the *Declaration of John D. Morberg in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), which was filed with the Court concurrently herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105, 345, 363 and 503 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## GENERAL BACKGROUND

2. On the date hereof (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed motions or applications seeking certain "first day" relief.

3. The Debtors continue to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has been established in these chapter 11 cases.

4.      Additional information about the Debtors' businesses, their capital structure and the circumstances leading to these chapter 11 cases is contained in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

5.      By this Motion, the Debtors seek entry of an order (a) authorizing the continued use of their existing cash management system, (b) authorizing the continued use of the Debtors' Bank Accounts and existing check stock, (c) authorizing the Debtors' continued use of their prepetition deposit practices and waiving the requirements of section 345(b) in connection therewith on an interim basis, (d) authorizing the continuation of intercompany transactions and granting administrative expense status to certain postpetition intercompany claims between and among the Debtors and (e) maintaining the ability to use debit, wire and ACH payments.  In connection with this relief, the Debtors respectfully request a waiver of certain of the operating guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") that require the Debtors to close all prepetition bank accounts, open new accounts designated as debtor in possession accounts, and provide new check stock.

## BASIS FOR RELIEF REQUESTED

I.      **Request for Authority to Continue Using the Cash Management System**

**A.  Description of the Cash Management System**

6.      In the ordinary course of business, the Debtors use a cash management system to collect funds from their operations and to pay operating and administrative expenses (the "Cash Management System").  The Cash Management System allows the Debtors to collect and transfer efficiently the cash generated by their business and pay their financial obligations.  The Cash Management System is similar to those utilized by other corporate enterprises to collect, concentrate and disburse funds generated by numerous operating entities in a cost-effective and

orderly manner.  A general diagram of the movement of funds within the Cash Management System is attached hereto as Exhibit B.

7.      The Cash Management System is carefully managed through oversight procedures implemented by the Debtors' financial and accounting personnel located at the Debtors' corporate offices in San Diego, California.  Through its control over the Cash Management System and the daily reporting received in connection therewith, the Debtors' management can provide cash forecasting and reporting, monitor the collection and disbursement of funds, and maintain control of the administration of the Bank Accounts.  The Cash Management System is essential to the efficient execution and achievement of the Debtors' strategic business objectives, and, ultimately, to maximizing the value of the Debtors' estates.

8.      The Cash Management System operates primarily through bank accounts maintained at Wells Fargo Bank, N.A. ("Wells Fargo").  The Cash Management System generally consists of a series of "zero-balance" accounts that sweep, each business day, into a main concentration account (the "Concentration Account") maintained by Garden Fresh Restaurant Corp. ("GF Restaurant Corp.") at Wells Fargo.  The Concentration Account funds two controlled disbursement accounts to cover operating and administrative expenses.  A more detailed description of the accounts used in the Cash Management System follows.

### i.      Depository Accounts

9.      The Debtors maintain two primary depository accounts for the collection of cash from operations at their one hundred twenty-three (123) restaurants.  Specifically, GF Restaurant Corp. maintains one depository account with Wells Fargo ("Depository Account #1") that collects and processes cash revenue from ninety-four (94) of the Debtors' restaurants.  GF Restaurant Corp. also maintains a depository account with Wells Fargo ("Depository Account

#2" and, together with Depository Account #1, the "Depository Accounts") to collect and process cash revenue from twenty-nine (29) of the Debtors' other restaurants. Depository Account #2 has thirty (30) sub-accounts maintained with Wells Fargo that facilitate revenue tracking at specific restaurants

10.     Cash revenue received at each restaurant is transported every two (2) to four (4) business days by armored transport to be deposited into the relevant Depository Account. Funds in each Depository Account are then directly swept to the Concentration Account each business day such that at the close of each business day there is a zero balance in each of the Depository Accounts. The Debtors receive a daily report on each of the Depository Accounts from Wells Fargo. This structure allows the Debtors to closely track revenue at each of their one hundred and twenty-four (124) restaurants and facilitates cash flow forecasting.

> ### ii.     Disbursement Accounts

11.     The Debtors process substantially all of their accounts payable and payroll obligations through two disbursement accounts maintained with Wells Fargo.

12.     Accounts Payable. The Debtors' accounts payable account (the "A/P Account") is a controlled disbursement account maintained by GF Restaurant Corp. at Wells Fargo. The A/P Account is funded through the Concentration Account. The Debtors transmit check files to Wells Fargo, and Wells Fargo clears checks based on these instructions. The Debtors control for proper disbursements and fraud protection through "positive pay," a banking service offered by Wells Fargo. If the check sequence number, date, payee name and payable amount match the file transmitted by the Debtors to Wells Fargo, the check will clear and will be funded from the Concentration Account. The A/P Account generates a negative balance as payments are recorded each day; this negative balance then sweeps directly to the Concentration Account such

that at the close of each business day there is a zero balance in the A/P Account.  This enables the Debtors to monitor their cash position on a daily basis.

13.    <u>Payroll</u>.    The Debtors process payroll through a payroll account (the "<u>Payroll Account</u>") maintained by GF Restaurant Corp. at Wells Fargo.  The Payroll Account is used to process both direct deposit payments and check payments to employees.  With respect to direct deposit payroll payments, the Debtors generate a direct deposit file and transmit associated ACH debit instructions to Wells Fargo each pay period.   These amounts are funded from the Concentration Account.  With respect to payroll payments that are issued via check, the Debtors transmit a "positive pay" file to Wells Fargo prior to the applicable pay date.  Checks that are verified against the "positive pay" file will clear and will be funded from the Concentration Account.  The Payroll Account generates a negative balance as payments are recorded for each pay date; this negative balance then sweeps directly to the Concentration Account such that at the close of each business day there is a zero balance in the Payroll Account.

### iii.    Merchant Account

14.    GF Restaurant Corp. maintains a merchant account with Wells Fargo (the "<u>Merchant Account</u>") that collects all proceeds from credit card transactions at the Debtors' restaurants as well as proceeds from gift card transactions through the Debtors' website and authorized third party resellers.[2]  Credit card and gift card processors deposit cash directly into the Merchant Account.[3]  Generally, there is a two- to four- day lag between the occurrence of a credit card transaction at one of the Debtors' restaurants and deposit of the resulting proceeds

---

[2] In a motion filed concurrently herewith the Debtors seek authorization to continue their gift card and other customer programs and policies.

[3] The Debtors accept Visa, MasterCard, JTB, Diner's Club, American Express and Discover.  Paymentech serves as the credit card processor for Visa, MasterCard, JTB and Diner's Club.  Blackhawk Network processes payments from gift card transactions at retail locations.  Incomm Digital Solutions (also known as "<u>Giftango</u>") serves as the processor for online gift card transactions.

into the Merchant Account.    Funds in the Merchant Account are swept directly to the Concentration Account each business day such that at the close of each business day there is a zero balance in the Merchant Account.

### iv.    Standalone Accounts

15.    The Debtors maintain four other Bank Accounts that do not sweep into the Concentration Account and are also critical to continue the efficient operation and administration of the Debtors.

16.    <u>Change Order Account</u>.    GF Restaurant Corp. maintains a change order account with Wells Fargo (the "<u>Change Order Account</u>").    The Change Order Account provides a mechanism for the Debtors to exchange large denomination currency for smaller denomination, including coins, to stock cash registers at the Debtors' restaurants.    On an as-needed basis, the Debtors deposit cash into the Change Order Account and withdraw an identical amount in the required denominations.    As a result of delays in processing the deposit and/or withdrawal, the Debtors maintain a balance of approximately $100,000 in the Change Order Account to ensure that there are sufficient funds on hand to satisfy required withdrawals.

17.    <u>Rabbi Trust Account</u>.    GF Restaurant Corp. sponsors a retirement plan for qualified executives pursuant to section 409A of the Internal Revenue Code (the "<u>Deferred Compensation Plan</u>").    Wells Fargo serves as trustee for the Deferred Compensation Plan. Executives who elect to participate in the Deferred Compensation Plan defer a portion of their compensation until a future year.    The deferred amounts are invested in whole life insurance policies (sometimes referred to as "key man life insurance"), which are intended to be used to fund GF Restaurant Corp.'s obligations under the Deferred Compensation Plan.    GF Restaurant Corp. maintains an account with Wells Fargo (the "<u>Rabbi Trust Account</u>") in order to collect and

7

process funds received pursuant to the Deferred Compensation Plan and hold the life insurance policies purchased to fund the plan.

18.    <u>Promotions Account</u>.    Garden Fresh Promotions, LLC ("<u>GF Promotions</u>"), a wholly-owned subsidiary of GF Restaurant Corp., maintains an operating account with Wells Fargo (the "<u>Promotions Account</u>").    GF Promotions manages substantially all business aspects of the Debtors' gift card program.    Substantially all of GF Promotions' operating expenses are paid through the Concentration Account, with a resulting adjustment to an intercompany payable from GF Restaurant Corp. to GF Promotions (the "<u>GF Intercompany Payable</u>") of approximately $5 million.    A small balance (i.e., $1,000 or less) is maintained in the Promotions Account to be available to fund operating expenses for GF Promotions if necessary.

19.    <u>Health Plan Account</u>.    The Debtors maintain self-insured health (the "<u>Health Plan</u>"), dental (the "<u>Dental Plan</u>") and vision (the "<u>Vision Plan</u>") insurance plans (collectively, the "<u>Benefit Plans</u>") for their employees.    GF Restaurant Corp. maintains an account with Citibank, N.A. ("<u>Citibank</u>") that is used to fund benefit claims under the Health Plan (the "<u>Health Plan Account</u>").    A minimum balance of approximately $60,000 is maintained in the Health Plan Account.    On a weekly basis, Citibank provides a report on the dollar amount of benefit claims processed during the previous seven-day period.    This amount is then transferred from the Concentration Account to the Health Plan Account via an ACH debit transaction.    This enables the Debtors to maintain a minimum balance in the Health Plan Account.    Benefit claim payments under the Dental and Vision Plans are paid through the accounts payable cycle described above in connection with the A/P Account.    Expected benefit claim payments under the Benefit Plans are incorporated into the Debtors' cash flow forecasts.

### B. Continuing the Use of the Cash Management System
### Is in the Best Interests of the Debtors' Estates and Creditors

20.     The Debtors seek authority to continue using their Cash Management System, as described above, on a postpetition basis.  The Cash Management System and applicable procedures constitute ordinary, usual and essential business practices and are integral to the operation and administration of the Debtors' business.  The Cash Management System provides the Debtors with significant benefits, including, among other things, the ability to (a) control corporate funds centrally, (b) ensure the availability of funds when necessary, (c) reduce costs and minimize administrative expenses, and (d) develop accurate account balance information to forecast cash needs on an ongoing basis.  Requiring the Debtors to adopt new, segmented cash management systems would be expensive, would create unnecessary administrative problems and would be disruptive to the Debtors' business operations when it is critical that the Debtors conduct operations in a normal, uninterrupted manner to ensure continued confidence on the part of their customers, employees and suppliers.  As a result of the large and integrated structure of the Cash Management System, it would not be possible to establish a new system of accounts and a new cash management system without substantial additional costs and expenses to the Debtors' estates and a significant disruption of the Debtors' business operations.

21.     Maintenance of the Cash Management System also is essential.  Maintaining the Cash Management System will facilitate the ongoing operation of the Debtors' businesses in an efficient manner.  The Cash Management System and applicable accounting procedures and controls enable the Debtors to trace funds through the system, ensure that all transactions are accurately documented and recorded, and forecast their cash needs on an ongoing basis.  The Cash Management System and applicable procedures also help guard against fraud and protect the integrity of the overall system.

22.     The Debtors' request for authorization to continue to use the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary course transactions required to operate its business. *See, e.g.*, *In re Roth Am.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system.  *See In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Nevertheless, the Debtors present this Motion to the extent any aspect of the Cash Management System could be considered outside the ordinary course of business for purposes of section 363(c).

23.     Courts in this and other districts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997 F.2d 1039 (3d Cir. 1993); *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993); *see also In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 424 (3d Cir. 2005) (acknowledging that bankruptcy court's approval of cash management systems is appropriate).

24.     To the extent that the continued use of the Cash Management System is outside the ordinary course of business for purposes of section 363(c), this Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, which provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy code]." 11 U.S.C. § 105(a).

25.     For all the reasons stated above, the relief requested herein is both necessary and appropriate to allow the Debtors to reorganize successfully and quickly.

**II.     Request for Authority to Maintain Existing Bank Accounts and
          Continue to Use Existing Check Stock**

26.     The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession accounts; (b) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and a reference to the bankruptcy case number and type of account.

**A.  Request for Authority to Maintain Existing Bank Accounts**

27.     The Debtors seek a waiver of the U.S. Trustee Guideline requirement that their bank accounts be closed and that new postpetition bank accounts be opened, and that separate tax and cash collateral accounts be maintained, along with any other, similar requirements, so that the Debtors may maintain their existing bank account structure.  Such requirements would cause enormous disruption in the Debtors' businesses and would impair the Debtors' efforts to reorganize quickly.  As described above, the Bank Accounts comprise a substantial part of an established and effective Cash Management System that the Debtors need to maintain to ensure

the orderly and efficient collection, concentration and disbursement of funds in the ordinary course of their businesses. A complete list of the Bank Accounts is attached hereto as <u>Exhibit C</u>.

28. In other cases, this Court has waived the strict enforcement of bank account closing requirements and replaced them with an alternative procedure that provides the same protection. Such cases have permitted debtors in possession to maintain the general structure of their prepetition bank accounts, as is requested here. *See, e.g.*, *In re Halcón Res. Corp.*, Case No. 16-11724 (BLS) (Bankr. D. Del. Aug. 19, 2016); *In re Roadhouse Holding Inc.*, Case No. 16-11819 (BLS) (Bankr. D. Del. Aug. 9, 2016); *In re Triangle USA Petroleum Corp.*, Case No. 16-11566 (MFW) (Bankr. D. Del. Aug. 5, 2016); *In re Maxus Energy Corp.*, Case No. 16-11501 (CSS) (Bankr. D. Del. July 12, 2016); *In re Hercules Offshore, Inc.*, Case No. 16-11385 (KJC) (Bankr. D. Del. July 11, 2016); *In re Dex Media, Inc.*, Case No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016).

29. Accordingly, the Debtors request that the Court allow them to operate each of the Bank Accounts as maintained in the ordinary course of business before the Petition Date. The Debtors further request that each of the Bank Accounts be deemed to be a debtor in possession account and that the Debtors be authorized to maintain and continue using these accounts in the same manner employed before the Petition Date. The Debtors further request that each of Wells Fargo and Citibank be authorized to continue to service and administer the Bank Accounts as accounts of the relevant Debtors as debtors in possession without interruption and in the usual and ordinary course of business.

**B. Request for Authority to Continue Using Existing Check Stock**

30. The Debtors use pre-printed check stock. Local Rule 2015-2(a) provides that the Debtors may, with Court approval, continue to use their existing check stock without imprinting "Debtor-in-Possession" thereon until such checks have been used. To avoid disruption of the

Cash Management System and unnecessary expense, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their existing check stock without reference to their status as debtors in possession.

31.     The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their existing check stock.  The Debtors will be sending a notice of commencement of these chapter 11 cases to all creditors.  Further, most parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession.  The Debtors believe that it would be costly and inefficient to cease using all existing check stock.  Such a change could create a sense of disruption and potential confusion within the Debtors' organization and for Debtors' customers, suppliers and vendors.  Accordingly, the Debtors respectfully submit that changing their existing check stock  is unnecessary and unduly burdensome, and request that they be allowed to use their existing check stock without imprinting "debtor-in-possession" until their existing supply has been depleted.

### III.     Request that the Court Waive the Deposit Requirements of 11 U.S.C. § 345(b) on an Interim Basis

32.     The Debtors believe they are in compliance with the requirements of section 345 of the Bankruptcy Code because the Bank Accounts are maintained at U.S. Trustee-approved depository institutions.[4]  However, out of an abundance of caution, the Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis.

33.     Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For

---

[4] Prior to August 1, 2016, the Concentration Account would sweep daily into an investment account maintained with Wells Fargo.  This practice was discontinued as of August 1, 2016, and the Debtors do not intend to elect any sweep options for the Concentration Account in the future.

deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee-approved corporate surety.  A court may, however, dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

34.    As noted above, all of the Bank Accounts are believed by the Debtors to be maintained at authorized depositories.  Therefore, the Bank Accounts are likely already in compliance with the requirements of section 345(b) of the Bankruptcy Code.  However, out of an abundance of caution, the Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis.

### IV.    Request for Authority to Continue Intercompany Transactions and for the Court to Grant Administrative Expense Status to Certain Postpetition Intercompany Claims

35.    In the ordinary course of their business operations, the Debtors engage in various intercompany transactions.   As of the Petition Date, there are intercompany claims (the "Intercompany Claims") that reflect intercompany receivables and payables between GF Restaurant Corp. and GF Promotions (the "Intercompany Transactions").[5]  The Intercompany Transactions include charges related to the Debtors' gift card program, centrally billed expenses and allocations of overhead and other charges between GF Restaurant Corp. and GF Promotions. Before the Petition Date, GF Restaurant Corp. and GF Promotions settled their intercompany charges pursuant to adjustments in the GF Intercompany Payable.  On a monthly basis, GF Promotions records (i) a payable to GF Restaurant Corp. for gift card sales revenue and (ii) a receivable from GF Restaurant Corp. for gift card redemptions as well as commission fees. During the month, GF Promotions also records direct expenses related to the gift card program,

---

[5] The Debtors do not anticipate making any postpetition Intercompany Transfers to any non-debtor affiliate.

such as bank fees, third party processor fees, shipping (for online and corporate orders), production and marketing costs, and other related expenses. On an annual basis, indirect costs incurred by GF Restaurant Corp. are allocated to GF Promotions. These indirect costs include payroll costs for individuals performing functions related to GF Promotions and gift card processing, as well as a portion of related utilities, rent and other overhead charges. Intercompany Transactions are tracked and reflected in the Debtors' respective books and records and can be ascertained, traced and accounted for using the Debtors' Cash Management System. The Debtors expect the Intercompany Transactions to continue postpetition in the ordinary course of business.

36.     The Debtors hereby seek the authority to continue settling postpetition Intercompany Transactions in a manner that is consistent with the Debtors' prepetition practices. Specifically, the Debtors seek authority to settle the intercompany charges between GF Restaurant Corp. and GF Promotions by offsetting such charges against the GF Intercompany Payable. Additionally, pursuant to section 503(b) of the Bankruptcy Code, the Debtors request that all Intercompany Claims against a Debtor by another Debtor arising postpetition, in the ordinary course of business, as a result of an Intercompany Transaction be granted administrative expense priority status. If the Intercompany Claims are accorded administrative expense priority status, each entity utilizing funds that flow through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary-course transactions.

37.     Authorization to engage in, and accordance of administrative expense treatment to, intercompany transactions, similar to the relief requested here, is routinely granted in complex chapter 11 cases. *See, e.g.*, *In re Halcón Res. Corp.*, Case No. 16-11724 (BLS) (Bankr. D. Del. Aug. 19, 2016); *In re Triangle USA Petroleum Corp.n*, Case No. 16-11566 (MFW) (Bankr. D.

Del. Aug. 5, 2016); *In re Maxus Energy Corp.*, Case No. 16-11501 (CSS) (Bankr. D. Del. July 12, 2016); *In re Hercules Offshore, Inc.*, Case No. 16-11385 (KJC) (Bankr. D. Del. July 11, 2016); *In re Dex Media, Inc.*, Case No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016).

38.     The Debtors also seek authority to complete Intercompany Transactions that may involve amounts owed or services provided before the Petition Date.   Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).   Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."  *Id.*   As the *CoServ* court noted, there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id.*   The pre-plan satisfaction of prepetition claims is one such instance if the payment "is the only means to effect a substantial enhancement of the estate."  *Id.*

39.     As with the Cash Management System generally, authorizing the Debtors to continue the Intercompany Transactions is appropriate under sections 363(b) or 363(c) of the Bankruptcy Code and is an appropriate exercise of the Court's equitable powers under section 105(a) of the Bankruptcy Code.  *See, e.g.*, *In re Gen. Growth Props.*, 412 B.R. 609, 610 (Bankr. S.D.N.Y. 2009) (holding that debtors were authorized to continue prepetition cash management practices, including intercompany transactions, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code); *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that the order authorizing continued use of cash management system that involved transfers of funds to

non-debtor affiliates was "entirely consistent" with section 363(c)(1) because the practice was "usual and customary in the past").

40.     With respect to the settlement of intercompany charges by adjustments to the GF Intercompany Payable, section 558 of the Bankruptcy Code preserves debtors' setoff rights, providing in relevant part that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury and other personal defenses." 11 U.S.C. § 558.    Unlike section 553 of the Bankruptcy Code, which preserves creditors' setoff rights, section 558 permits debtors to set off prepetition claims against postpetition amounts owed.  *In re Women First Healthcare, Inc.*, 345 B.R. 131, 134–35 (Bankr. D. Del. 2006).  In order to exercise setoff rights under section 558, there must be mutuality between the parties, which exists in this case with respect to the set-off contemplated pursuant to the GF Intercompany Payable.

41.     The Debtors believe that the continuation of the Intercompany Transactions is within their sound business judgment because, among other reasons, the Intercompany Transactions reduce the Debtors' administrative costs, facilitate satisfaction of the Debtors' obligations, preserve the Debtors' going concern value and are integral to the Debtors' daily operations.  The Debtors believe the burden and harm associated with disrupting the Debtors' Cash Management System to identify and suspend or cancel Intercompany Transactions would outweigh any benefit to the Debtors' creditors or estates.

**V.     Request for Authority to Continue to Use Debit, Wire and ACH Payments**

42.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  In

the ordinary course of business, the Debtors conduct many transactions through ACH payments and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, ACH payment or other similar methods is impaired, the Debtors' business operations may be unnecessarily disrupted and their estates will incur additional costs.  Accordingly, the Debtors respectfully request authority to continue using debit, wire and ACH payments.

## VI.    Request to Find That Bankruptcy Rule 6003(b) Has Been Met

43.    Bankruptcy Rule 6003(b) empowers a court to grant relief under section 363 of the Bankruptcy Code within the first twenty-one (21) days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Any disruption to the Cash Management System would seriously harm the Debtors and their estates.  Indeed, without the Cash Management System, payments may not be made in a timely fashion, and the Debtors would be unable to track incoming receipts, efficiently make disbursements and forecast cash needs, or properly allocate shared expenses.  These failures would likely result in the refusal of essential services, thereby causing a diminution in the value of the Debtors' estates to the detriment of all parties in interest.  Accordingly, the Debtors meet the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b).

## VII.    Request for Waiver of Bankruptcy Rule 6004(h)

44.    Finally, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

45.     Notice of this Motion has been provided to:  (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; (v) the Prepetition Secured Parties; (vi) the lenders under the proposed debtor in possession financing facility; and (vii) the Debtors' banks and financial institutions.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the order substantially in the form annexed hereto as Exhibit A, granting the relief requested herein and such further relief as may be just and proper under the circumstances.

Dated: October 3, 2016
       Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**
Neil E. Herman (*pro hac vice* pending)
James O. Moore (*pro hac vice* pending)
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

- and –

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**<u>Order</u>**

01:19332340.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. _____ |

## ORDER (I) APPROVING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS AND EXISTING CHECK STOCK, (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b) ON AN INTERIM BASIS, (IV) AUTHORIZING THE CONTINUATION OF INTERCOMPANY TRANSACTIONS AND GRANTING ADMINISTRATIVE EXPENSE STATUS TO CERTAIN POSTPETITION INTERCOMPANY CLAIMS, AND (V) MAINTAINING THE ABILITY TO USE DEBIT, WIRE AND ACH PAYMENTS

Upon consideration of the motion (the "Motion")[2] of the above-captioned Debtors for entry of an order pursuant to sections 105, 345, 363 and 503 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2 (i) authorizing and approving the Debtors' continued use of their existing cash management system, (ii) authorizing the Debtors to continue to use their prepetition bank accounts and existing check stock, (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis with respect to the Debtors' deposit practices, (iv) authorizing the continuation of intercompany transactions and granting administrative expense status to certain postpetition intercompany claims between and among the Debtors and (v) maintaining the ability to use debit, wire and ACH payments; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion.

and 157, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and after due deliberation, and  good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, and DECREED that**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, in their discretion, to: (a) continue operating the Cash Management System described in the Motion; (b) maintain the existing bank accounts set forth on Exhibit C to the Motion (the "Bank Accounts"); (c) continue to deposit funds in accordance with their current practices set forth in the Motion; (d) continue Intercompany Transactions between Debtors; and (e) maintain the ability to use debit, wire and ACH Payments.

3.      The Debtors will maintain records in the ordinary course of business reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be ascertainable.

4.      The Debtors are further authorized, in their discretion, to: (a) continue to use, with the same account numbers, all of the bank accounts in existence as of the Petition Date, including those accounts identified on Exhibit C to the Motion; (b) treat the Bank Accounts for all purposes as debtor in possession accounts; (c) deposit funds into and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers and other debits; (d) pay any

01:19332340.3

2

ordinary course bank fees incurred in connection with the Bank Accounts; and (e) otherwise perform their obligations under the documents governing the Bank Accounts.

5.        The Debtors' banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored only if specifically authorized by order of this Court.

6.        Except for those checks that may be honored and paid to comply with any order(s) of this Court authorizing payment of certain prepetition claims, no checks or drafts issued on the Bank Accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid.

7.        In the course of providing cash management services to the Debtors, each of the banks at which the Bank Accounts are maintained is authorized, without further order of this Court, to deduct the applicable fees from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

8.        Notwithstanding any other provision of this Order, any bank may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer

drawn or issued by the Debtors before the Petition Date should be honored pursuant to any order of this Court, and any bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors or (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, shall neither be deemed to be in violation of this Order nor be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

9.      Any banks are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (b) accept and hold the Debtors' funds in accordance with the Debtors' instructions; provided, that, in each case the Debtors' banks shall not have any liability to any party for relying on such representations.

10.      The Debtors, having shown sufficient cause under section 345(b) of the Bankruptcy Code, are granted a 30-day interim waiver to continue their deposit practices with respect to the Bank Accounts.

11.      For Banks that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each Bank, (b) provide the Bank with the applicable employer identification number and (c) identify each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

12.      For Banks that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the date of this Order.  The U.S.

Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

13.    The Debtors are authorized to use their existing check stock and are not required to (i) immediately obtain new check stock reflecting their status as debtors in possession, including listing the chapter 11 case numbers, or (ii) print "Debtor in Possession" on any of their existing check stock.  Any check stock ordered after the Petition Date shall bear the legend "Debtors in Possession" and the lead case number for these chapter 11 cases.  To the extent the Debtors prints their own checks from blank check stock, the electronic template shall be updated to include "Debtors in Possession" and the case number for the lead chapter 11 case within fourteen (14) days of the entry of this order.

14.    Nothing contained herein shall prevent any of the Debtors from closing any Bank Account or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant Bank is authorized to honor the Debtors' requests to close or open such Bank Account or additional bank accounts, as the case may be; provided, that, notice of the opening or closure of any account shall be given to the U.S. Trustee as soon as practicable.

15.    The Debtors may settle postpetition Intercompany Transactions in a manner that is consistent with the Debtors' prepetition practices and all Intercompany Claims that arise after the Petition Date as a result of an Intercompany Transaction shall be accorded administrative expense priority status.

16.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an

admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien

17.     Each of the Debtors may exercise their rights under section 558 of the Bankruptcy Code to setoff obligations arising under Intercompany Transactions against amounts owed by Debtor affiliates.

18.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.  The requirements of Bankruptcy Rule 6004(a) are waived under the circumstances.

19.     Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

20.     Within five (5) days of the entry of this Order, the Debtors will serve a copy of this Order on the Banks listed in Exhibit C to the Motion.

21.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

22.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2016
      Wilmington, Delaware

                                   _____

                                   United States Bankruptcy Judge

**EXHIBIT B**

**Garden Fresh Restaurant Account Structure
as of 9/30/16**



# EXHIBIT C

## Bank Accounts

| Bank Name and Address | Account Number | Account Name / Type |
|---|---|---|
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX8404 | Concentration Account |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX7439 | Depository Account #1 |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX9094 | Depository Account #2<br>(**Note:  see subaccounts listed below) |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX5304 | Accounts Payable Account; Controlled Disbursement Account |
| Wells Fargo Bank, N.A.<br>420 Montgomery St. San Francisco, CA 94104 | XXXX-XX5346 | Payroll Account; Controlled Disbursement Account |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX8461 | Merchant Account |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXX-XX8446 | Change Order Account |
| Wells Fargo Bank, N.A.<br>8954 Rio San Diego Dr, Suite 403, San Diego, CA 92108 | 5XXXXXX0000 | Rabbi Trust Account |
| Wells Fargo Bank, N.A.<br>420 Montgomery St., San Francisco, CA 94104 | XXXXXX9580 | Promotions Account |

| Citibank, N.A.<br>One Penns Way, New Castle, DE 19720 | XXXX 5906 | Health Plan Account |
|---|---|---|

| Sub-accounts under Depository Account #2 | |
|---|---|
| **Account Number** | **Account Name** |
| XXXXXX3101 | GARDEN FRESH RESTAURANT #102 |
| XXXXXX0038 | GARDEN FRESH RESTAURANTS-TAMPA #37 |
| XXXXXX0046 | GARDEN FRESH RESTAURANTS-CAROLLWOOD #30 |
| XXXXXX0053 | GARDEN FRESH RESTAURANTS-BRANDON #38 |
| XXXXXX0061 | GARDEN FRESH RESTAURANTS-HOLLYWOOD #51 |
| XXXXXX0079 | GARDEN FRESH REST-PEMBROKE PINES #78 |
| XXXXXX0087 | GARDEN FRESH RESTAURANTS-PALM HARBOR #21 |
| XXXXXX0095 | GARDEN FRESH RESTAURANTS-LARGO #27 |
| XXXXXX0103 | GARDEN FRESH RESTAURANTS-PLANTATION #40 |
| XXXXXX0111 | GARDEN FRESH REST-FT. LAUDERDALE #52 |
| XXXXXX0129 | GARDEN FRESH REST-CORAL SPRINGS #55 |
| XXXXXX0137 | GARDEN FRESH RESTAURANTS BOCA RATON #80 |
| XXXXXX0145 | GARDEN FRESH RESTAURANTS-SARASOTA #45 |
| XXXXXX0152 | GARDEN FRESH RESTAURANTS-ORLANDO I #72 |
| XXXXXX0160 | GARDEN FRESH RESTAURANTS-ORLANDO II #74 |
| XXXXXX0178 | GARDEN FRESH REST-ALTAMONT SPRINGS #50 |
| XXXXXX0186 | GARDEN FRESH RESTAURANTS-FORT MYERS #49 |
| XXXXXX0194 | GARDEN FRESH RESTAURANTS-ORANGE PARK #63 |
| XXXXXX0202 | GARDEN FRESH RESTAURANTS-JACKSONVILLE #7 |
| XXXXXX1857 | GARDEN FRESH RESTAURANT CORP. #103 |

| | |
|---|---|
| XXXXXX8803 | SWEET TOMATOES |
| XXXXXX8991 | GARDEN FRESH RESTAURANT CORP |
| XXXXXX9427 | SWEET TOMATOES #107 |
| XXXXXX7257 | GARDEN FRESH RESTAURANT CORP |
| XXXXXX4439 | SWEET TOMATOES #118 |
| XXXXXX6846 | SWEET TOMATOES #125 |
| XXXXXX6853 | SWEET TOMATOES #126 |
| XXXXXX1176 | SWEET TOMATOES #121 |
| XXXXXX9799 | GARDEN FRESH REST SWEET TOMATOES #120 |
| XXXXXX7912 | GARDEN FRESH REST CORP SWEET TOMATOES #128 |

01:19332340.3