**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN FRESH RESTAURANT | ) | |
| INTERMEDIATE HOLDING, LLC, et al.,[1] | ) | Case No. 16-12174 (CSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**OBJECTION OF PRODUCE ALLIANCE, LLC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS ARISING UNDER (A) THE PERISHABLE AGRICULTURAL COMMODITIES ACT, (B) THE PACKERS AND STOCKYARDS ACT, AND (C) SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED TO THE FOREGOING**

COMES NOW, Produce Alliance, LLC. ("Produce Alliance"), by and through undersigned counsel, and hereby file their Objection to *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections §§105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Payment of Prepetition Claims Arising Under (A) The Perishable Agricultural Commodities Act, (B) the Packers and Stockyards Act, and (C) Section 503(b)(9) of the Bankruptcy Code and (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* [Docket No. 10] filed by the above-captioned Debtors (the "PACA Motion"). In support of its Objection, Produce Alliance states as follows:

**BACKGROUND**

1. On October 3, 2016, Debtors, Garden Fresh Restaurant Intermediate Holding, LLC, Garden Fresh Holdings, Inc., GF Holdings, Inc. Garden Fresh Restaurant Corp., and

---

[1] The Debtors in these cases, Garden Fresh Restaurant Intermediate Holding, LLC, Garden Fresh Holdings, Inc., GF Holdings, Inc. Garden Fresh Restaurant Corp., and Garden Fresh Promotions, LLC are all related entities operating restaurants known as Souplantation and Sweet Tomatoes. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16].

Garden Fresh Promotions, LLC, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Bankruptcy Court.

2. Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. At the same time, Debtors filed a *Motion for Interim and Final Orders (I) Pursuant to 11 U.S.C. 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (III) Granting Related Relief* [Doc. 13] ("the DIP Motion"), that provides Debtors' secured lenders with, among other things, adequate protection replacement liens, additional liens, and super-priority administrative expense claims, along with the right to credit bid for Debtors' assets. The DIP Motion is accompanied by an initial nine (9) week budget that fails to delineate payment of an estimated $1,430,000.00 Debtors admittedly owe to pre-petition produce suppliers and trust beneficiaries of Debtors under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], p. 25. In fact, the term "PACA" is not found in the DIP Motion, the related DIP Agreement, or proposed Interim and Final DIP Orders. Not surprisingly, the DIP Motion does not provide for any set aside, protection, or payment to Debtors' unpaid produce suppliers, nor does it provide for any claim procedure to identify unpaid trust beneficiaries under the PACA.

4. Prior to the Petition Date, Produce Alliance supplied Debtors with perishable agricultural commodities ("produce") having an aggregate principal value of $796,512.42, all of

which remains unpaid and is past due. An itemized statement of account is attached hereto as **Exhibit A**. A sampling of unpaid invoices to Debtors are attached as **Exhibit B**.

5. Produce Alliance remains unpaid for this prepetition balance.

6. Produce Alliance is a PACA licensee which preserved its rights as a beneficiary of the statutory trust created under the PACA by placing the language on its invoices to Debtors as allowed by 7 U.S.C. §499e(c)(4). *See* **Exhibit C** attached hereto.

7. Although they are separately incorporated, all of the Debtors maintain their operating accounts with Wells Fargo, which fund all of the Debtors' operations. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], p. 19.

8. Debtors also have admitted that they have intercompany claims and transactions among each other, including cash sweeps and intercompany loans. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], pp. 19-20. Accordingly, a commingling of Debtors' cash assets has occurred, with all such assets subject to the PACA trust.

## I.     SUMMARY OF OBJECTION

9. Produce Alliance objects to the relief requested in Debtors' PACA Motion on the grounds that Debtors are merely paying "lip service" to the PACA trust by requesting authorization to, but not being directed to, pay PACA claims that Debtors, in their sole discretion deem valid, and further conditioning any payment to Produce Alliance for pre-petition PACA trust debt upon Produce Alliance continuing to provide post-petition produce to Debtors on credit. *See* PACA Motion, p. 9, para. 22. This unlawful conditional payment of trust assets to the trust beneficiary by Debtors -- who is a PACA trustee -- violates the trust provisions of PACA and is prejudicial to Produce Alliance's rights under the PACA trust.

## II. ARGUMENT

### A. PACA Creates a Statutory Trust for the Benefit of Sellers of Produce.

10. Produce Alliance supplied Debtors, pre-petition, with wholesale quantities of produce worth the aggregate amount of $796,512.42. This sum remains outstanding despite Debtors' receipt and acceptance of the produce, and their use and benefit of these produce items. Additional sums for produce are due and owing to similarly situated unpaid produce suppliers. Debtors, who admittedly are operating as dealers under the PACA, a federal statute co-equal with the Bankruptcy Code, are required under PACA to pay "promptly" for produce and to "maintain sufficient assets in trust until full payment is made to all of their PACA trust beneficiaries," even in the event of the filing of bankruptcy. 49 Fed. Reg. at 45738; 7 U.S.C. § 499b(4). The rights of PACA trust beneficiaries to assets impressed with the PACA trust are superior to the rights of debtors, their secured creditors, and their bankruptcy professionals. 7 U.S.C. § 499e(c)(1); *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1379 (3d Cir. 1994); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003); *Nickey Gregory Co., LLC v. Agricap, LLC,* 597 F.3d 591, 594 (4th Cir. 2010)*; A&J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54 (2d Cir. 2008); *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997); *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1316 (11th Cir. 1992); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505, 514 (Bankr. E.D. Penn. 1987). In fact, PACA trust assets are not considered part of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996); *cf.* 11 U.S.C. § 541(d).

11. The PACA trust provision provides that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy."

*Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *see also In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993). "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the language of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2nd Cir. 2001).

12. The PACA was enacted in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry peculiarly susceptible to such practices. See, H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 <u>U.S. Code Cong & Admin News</u> 405, 406. In the early 1980's, Congress recognized a significant payment problem which had increased in recent years. *Id.*, p. 406. The USDA estimated that an additional ten percent (10%) was added to the consumer's purchase price of fruits and vegetables to make up the losses due to nonpayment for produce. *Id.*, p. 412. In view of this problem, Congress amended the PACA in 1984 by adding Section 5(c), 7 U.S.C. § 499e(c), "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *Id.*, p. 406.

13. To achieve this purpose, the amendment established a statutory trust under which a receiver of produce holds as a fiduciary its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables of proceeds from the sale thereof,

and any assets purchased or co-mingled with such proceeds (the "PACA Trust Assets"), until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Sanzone-Palmisano Company*, 986 F.2d 1010; and *Frio Ice, S.A.*, 918 F.2d 154. The trust provision is "a self-help tool that will enable (suppliers) to protect themselves against the abnormal risk of losses resulting from slow-pay and non-pay practices by buyers and receivers of fruits and vegetables." 49 F.R. 45736, Nov. 20, 1984. (*See also Frio Ice, S.A.*, 918 F.2d at 156 ("In the early 1980s, Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers.")) Thus, the goal of the law is to assure payment to produce suppliers from the proceeds of their produce.

14. Congress explained in the statute itself that the main roadblock to this goal was the diversion of produce proceeds to secured lenders. The statute's first clause states that secured financing arrangements in which produce proceeds are used as security and diverted from the suppliers to lenders are against the public interest and a burden on commerce and that the purpose of this law is to remedy this burden on commerce. 7 U.S.C. § 499e(c)(1).

15. Congress also specifically directed that the failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(e)(1). Dissipation of trust assets is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

16.     Subsection 2 of §499e(c), defines the corpus of the trust as all produce including all <u>inventories of food or other products</u> derived from produce, and all receivables or <u>proceeds from the sale of produce or its products</u>. 7 U.S.C. §499e(c)(2) (emphases added). The trust also extends to all inventory of produce a buyer obtained with a commingled account, *Sanzone-Palmisano Company*, 986 F.2d 1010, and to any other assets acquired or maintained with PACA trust funds. *In re Kornblum*, 81 F.3d 280; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990). <u>All assets of a produce buyer are presumed to be impressed with the PACA trust</u>. *Sanzone-Palmisano Company*, 986 F.2d 1010 (emphasis supplied).

17.     The Regulations provide that "[i]f a buyer or receiver declares bankruptcy. . . , trust assets are not to be considered part of the estate to be distributed to other Creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738.  There is no question that PACA trust assets are not property of the bankrupt's estate and must be set aside for distribution to trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 48 B.R. 926 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D.Cal. 1988); see also 11 U.S.C. § 541(d) (property in which debtor holds legal title, but not an equitable interest, does not become part of the estate).

18.     Furthermore, PACA beneficiaries are entitled to immediate turnover of their trust funds upon the commencement of a bankruptcy. *In re Fresh Approach*, 51 B.R. 412 (Bankr. N.D. Tex. 1985); *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75

B.R. 505 (Bankr. E.D. Pa. 1987). Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2nd Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D. Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989), or by immediately paying trust assets to the PACA trust creditors. Accordingly, as a PACA trust beneficiary, Produce Alliance is lawfully entitled to immediate turnover of PACA trust assets. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505; and *In re Fresh Approach, Inc.*, 51 B.R. 412.

### B. **The Relief Requested in the PACA Motion Violates PACA.**

19.  Under PACA, a receiver of produce must hold its produce-derived assets in trust as a fiduciary until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Co.,* 986 F.2d at 1012. In addition, under common law trust principles, the trust extends to any other assets acquired from a commingled account. *Sanzone-Palmisano Co.,* 986 F.2d at 1012*; In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

20.  The relief requested by Debtors grants them unfettered discretion regarding if and when a PACA trust beneficiary is paid its trust assets, running afoul of PACA's prompt payment requirements. 7 U.S.C. § 499b(4). Debtors can either seek an order requiring Debtors to pay Produce Alliance and similarly situated PACA trust creditors in the ordinary course, unconditionally, or it can request that a claims process be initiated and ordered for the Court to qualify and quantify PACA claims. Under either scenario, Debtors need to budget and set aside sufficient funds to address all of their PACA trust debt, which Debtors estimate is $1,430,000.00. But under no circumstances can Debtors strong-arm the extension of further credit from Produce

Alliance and similarly situated trust creditors by conditioning the possible payment of PACA trust debt upon the extension of produce goods on credit, while Debtors use the trust assets to pay secured lenders, bankruptcy professionals, and other creditors. Such relief is improper.

21. In essence, Debtors are requesting that they be permitted to continue dissipating trust assets through their continued operations and payments to purported secured creditors and professionals, with no provision made for payment of PACA Claimants' pre-petition PACA trust debt. This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust provision of PACA. It is contrary to federal law to reorganize using PACA trust assets. Such trust assets must be segregated and made "freely available" to satisfy sellers of produce.

### III.  RELIEF REQUESTED

22. Since Debtors are not seeking a court order to pay Produce Alliance and similarly situated PACA trust creditors in the ordinary course, with a budget delineating PACA payments, Debtors must be required to demonstrate how they will adequately protect the interests of their PACA trust creditors. *See* 11 U.S.C. §363(o). PACA Claimants request that Debtors be required to set aside sufficient monies to pay the PACA trust claims of PACA Claimants and similarly situated PACA trust creditors, which Debtors alleged total $1,430,000.00, in a segregated account to replace the PACA trust assets Debtors have already dissipated and to ensure sufficient funds are available to pay Debtors' PACA trust creditors.[2] The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of *In re Fleming Companies, Inc., et al*, Case No. 03-10945 (MFW), wherein the Court granted the same relief that PACA Creditors are seeking herein, and required

---

[2] Produce Alliance is entitled to payment of the full amount due under the PACA trust, which is the principal amount its PACA claim, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt. *See Coosemans Specialties, Inc. v. Garguilo*, 485 F.3d 701, 709 (2nd Cir. 2007).

the Debtors to set aside $26 million for the benefit of the Debtors' PACA Creditors, which were granted a replacement lien in the final financing order. Similarly, the United States Bankruptcy Court for the Southern District of New York granted the same relief and required the Debtors to set aside $30 million for the benefit of the Debtors' PACA Creditors in the case of *In re Winn Dixie Stores, Inc., et al.*, Case No. 05-11063-RDD (subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division). The adequate protection requested in this case is considerably less, but just as vital to protect the rights of PACA Claimants and similarly situated PACA trust creditors under the PACA trust.

23.     Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy. Failure to do so will likely lead to PACA Claimants being left with no PACA trust assets, no means of securing payment and no other adequate remedy.

## IV.     RESERVATION OF RIGHTS

24.     Produce Alliance reserves the right to assert additional objections to the relief requested in the PACA Motion at the hearing on this matter.

## V. CONCLUSION

25. For the foregoing reasons, Produce Alliance respectfully requests that the Debtors be required to segregate sufficient funds to pay the PACA trust claims of Produce Alliance and similarly situated PACA trust beneficiaries, and be directed to promptly pay this prepetition PACA trust debt, and that any other relief requested in their PACA Motion be modified so as to otherwise conform to Produce Alliance's objection as set forth herein.

October 3, 2016
Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ E.E. Allinson III*
Elihu E. Allinson III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

and

Mary Jean Fassett, Esq. *(Pro Hac Vice Pending)*
**McCarron & Diess**
4530 Wisconsin Avenue, N.W., Suite 301
Washington, DC 20016
Tel: (202) 364-0400
Fax: (202) 364-2731

*Attorneys for Produce Alliance, LLC*