**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN FRESH RESTAURANT | ) | Case No. 16-12174 (CSS) |
| INTERMEDIATE HOLDING, LLC, et al.,[1] | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | **Re: D.I. 13** |

**OBJECTION OF PRODUCE ALLIANCE, LLC TO
DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
(I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364
AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING,
(B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(C) USE CASH COLLATERAL OF PREPETITION SECURED PARTIES, AND
(D) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES
4001(B) AND 4001(C); AND (III) GRANTING RELATED RELIEF**

COMES NOW Produce Alliance, LLC ("Produce Alliance"), by and through undersigned counsel, and hereby files its Objection to *Motion for Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (III) Granting Related Relief* [Doc. 13] filed by the above-captioned Debtors (the "DIP Motion"). In support of its Objection, Produce Alliance specifically incorporates by reference its *Objection to Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections §§ 105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Payment of Prepetition Claims Arising Under (A) the Perishable Agricultural*

---

[1] The Debtors in these cases, Garden Fresh Restaurant Intermediate Holding, LLC, Garden Fresh Holdings, Inc., GF Holdings, Inc. Garden Fresh Restaurant Corp., and Garden Fresh Promotions, LLC are all related entities operating restaurants known as Souplantation and Sweet Tomatoes. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16].

1

*Commodities Act, (B) the Packers and Stockyards Act, and (C) Section 503(b)(9) of the Bankruptcy Code and (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* [Docket 34], and submits as follows:

## BACKGROUND

1. On October 3, 2016, Debtors, Garden Fresh Restaurant Intermediate Holding, LLC, Garden Fresh Holdings, Inc., GF Holdings, Inc. Garden Fresh Restaurant Corp., and Garden Fresh Promotions, LLC, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Bankruptcy Court.

2. Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. At the same time, Debtors filed the DIP Motion, which provides Debtors' secured lenders with, among other things, adequate protection replacement liens, additional liens, and super-priority administrative expense claims, along with the right to credit bid for Debtors' assets. The DIP Motion is accompanied by an initial nine (9) week budget that fails to delineate payment of an estimated $1,430,000.00 Debtors admittedly owe to pre-petition produce suppliers and trust beneficiaries of Debtors under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], p. 25. In fact, the term "PACA" is not found in the DIP Motion, the related DIP Agreement, or proposed Interim and Final DIP Orders. Not surprisingly, the DIP Motion does not provide for any set aside, protection, or payment to Debtors' unpaid produce suppliers, nor does it provide for any claim procedure to identify unpaid trust beneficiaries under the PACA.

4. Prior to the Petition Date, Produce Alliance supplied Debtors with perishable agricultural commodities ("produce") having an aggregate principal value of $796,512.42, all of which remains unpaid and is past due.

5. Produce Alliance is a PACA licensee which preserved its rights as a beneficiary of the statutory trust created under the PACA by placing the language on their invoices to Debtors as allowed by 7 U.S.C. §499e(c)(4).

6. Although they are separately incorporated, all of the Debtors maintain their operating accounts with Wells Fargo, which fund all of the Debtors' operations. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], p. 19.

7. Debtors also have admitted that they have intercompany claims and transactions among each other, including cash sweeps and intercompany loans. *See* Declaration of John D. Morberg in Support of Debtors' Petitions and First-Day Motions [Doc. 16], pp. 19-20. Accordingly, a commingling of Debtors' cash assets has occurred, with all such assets subject to the PACA trust.

## I.    SUMMARY OF OBJECTION

8. Produce Alliance objects to the relief requested in Debtors' DIP Motion on the grounds that such relief violates the trust provisions of PACA and is prejudicial to its rights under the PACA trust.

10. The DIP Motion fails to address the rights of Produce Alliance and similarly situated PACA trust creditors to prompt payment as beneficiaries of the PACA trust; nor is there adequate protection given to PACA trust creditors for the diminution of their PACA trust assets while cash and cash collateral -- which are presumed to be PACA trust assets -- are being used to fund ongoing operations and pay secured lenders and professionals.  Essentially, Debtors are using

PACA trust assets to continue operations, pay professionals and lenders, and otherwise provide adequate protection to the alleged secured lenders, but will not guarantee that there will be sufficient PACA trust funds available to pay Produce Alliance and similarly situated trust beneficiaries. The PACA trust interests of PACA trust creditors must be preserved and protected by segregation of assets equal to the total amount of the prepetition PACA trust claims owed by Debtors to Produce Alliance and similarly situated trust beneficiaries, which Debtors have already admitted total at least $1,430,000.00.

## II.    ARGUMENT

### A.    PACA Creates a Statutory Trust for the Benefit of Sellers of Produce.

9.    Produce Alliance supplied Debtors, pre-petition, with wholesale quantities of produce worth the aggregate amount of $796,512.42. This sum remains outstanding despite Debtors' receipt and acceptance of the produce, and their use and benefit of these produce items. Additional sums for produce are due and owing to similarly situated unpaid produce suppliers. Debtors, who admittedly are operating as dealers under the PACA, a federal statute co-equal with the Bankruptcy Code, are required under PACA to pay promptly for produce and to maintain sufficient assets in trust until full payment is made to all of their PACA trust beneficiaries, even in the event of the filing of bankruptcy. 49 Fed. Reg. at 45738; 7 U.S.C. § 499b(4). The rights of PACA trust beneficiaries to assets impressed with the PACA trust are superior to the rights of debtors, their secured creditors, and their bankruptcy professionals. 7 U.S.C. § 499e(c)(1); *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1379 (3d Cir. 1994); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003); *Nickey Gregory Co., LLC v. Agricap, LLC,* 597 F.3d 591, 594 (4th Cir. 2010)*; A&J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54 (2d Cir. 2008); *Gargiulo v. G.M. Sales,*

*Inc.*, 131 F.3d 995, 999 (11th Cir. 1997); *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1316 (11th Cir. 1992); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505, 514 (Bankr. E.D. Penn. 1987). In fact, PACA trust assets are not considered part of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996); 11 U.S.C. § 541(d).

10. The PACA trust provision provides that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *see also In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993). "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the language of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

11. To achieve the purpose of assuring payment to unpaid produce suppliers of their proceeds, the PACA amendment established a statutory trust under which a receiver of produce holds as a fiduciary its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables of proceeds from the sale thereof, and any assets purchased or co-mingled with such proceeds (the "PACA Trust Assets"), until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Sanzone-Palmisano Company*, 986 F.2d 1010; and *Frio Ice, S.A.*, 918 F.2d 154. The trust provision is "a self-help tool

that will enable (suppliers) to protect themselves against the abnormal risk of losses resulting from slow-pay and non-pay practices by buyers and receivers of fruits and vegetables." 49 F.R. 45736, Nov. 20, 1984. (*See also Frio Ice, S.A.*, 918 F.2d at 156 ("In the early 1980s, Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers.")) Thus, the goal of the law is to assure payment to produce suppliers from the proceeds of their produce.

12. Congress explained in the statute itself that the main roadblock to this goal was the diversion of produce proceeds to secured lenders. The statute's first clause states that secured financing arrangements in which produce proceeds are used as security and diverted from the suppliers to lenders are against the public interest and a burden on commerce and that the purpose of this law is to remedy this burden on commerce. 7 U.S.C. § 499e(c)(1).

13. Congress also specifically directed that the failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(e)(1). Dissipation of trust assets is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

14. Subsection 2 of §499e(c), defines the corpus of the trust as all produce including all <u>inventories of food or other products</u> derived from produce, and all receivables or <u>proceeds from the sale of produce or its products</u>. 7 U.S.C. §499e(c)(2) (emphases added). The trust also extends to all inventory of produce a buyer obtained with a commingled account, *Sanzone-*

*Palmisano Company*, 986 F.2d 1010, and to any other assets acquired or maintained with PACA trust funds. *In re Kornblum*, 81 F.3d 280; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990). <u>All assets of a produce buyer are presumed to be impressed with the PACA trust</u>. *Sanzone-Palmisano Company*, 986 F.2d 1010 (emphasis supplied). Accordingly, all assets of Debtors are presumed to be non-estate assets subject to the PACA trust.

  15. The Regulations provide that "[i]f a buyer or receiver declares bankruptcy. . . , trust assets are not to be considered part of the estate to be distributed to other Creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738. There is no question that PACA trust assets are not property of the bankrupt's estate and must be set aside for distribution to trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 48 B.R. 926 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D.Cal. 1988); *see also* 11 U.S.C. § 541(d) (property in which debtor holds legal title, but not an equitable interest, does not become part of the estate).

  16. Furthermore, PACA beneficiaries are entitled to immediate turnover of their trust funds upon the commencement of a bankruptcy. *In re Fresh Approach*, 51 B.R. 412 (Bankr. N.D. Tex. 1985); *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D. Pa. 1987). Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.

Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989), or immediately pay trust assets to the PACA trust creditors). Accordingly, as PACA trust beneficiaries, Produce Alliance is lawfully entitled to immediate turnover of PACA trust assets. *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505; and *In re Fresh Approach, Inc.*, 51 B.R. 412.

### B. The Relief Requested in the DIP Motion Violates PACA.

17.     Under PACA, a receiver of produce must hold its produce-derived assets in trust as a fiduciary until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co.*, 81 F.3d at 284; *Sanzone-Palmisano Co.,* 986 F.2d at 1012. In addition, under common law trust principles, the trust extends to any other assets acquired from a commingled account. *Sanzone-Palmisano Co.,* 986 F.2d at 1012*; In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

18.     The relief requested by Debtors provides adequate protection to Debtors' purported secured lenders in the forms of payments and replacement liens, and allowing the secured lenders to acquire Debtors' assets via credit bidding, but provides no relief to PACA Claimants and similarly situated trust beneficiaries. Such relief is improper because PACA Claimants' interest as PACA trust creditors primes the interests of Debtors' purported secured lenders. 7 U.S.C. § 499e(c)(1). Debtors' cash proceeds are subject to the PACA trust. Debtors' monthly cash payments of fees and expenses to secured lenders, their Lien Agents, and/or their counsel, expressly contravene PACA, which prohibits such funds to be paid to secured lenders while PACA trust creditors are unpaid. 7 U.S.C. §499e(c)(1) and (2); *Sanzone-Palmisano Company*, 986 F.2d at 1012-13. In fact, secured lenders have been required to disgorge trust funds they receive when

the PACA trust has been breached. *Reaves Brokerage Co.,* 336 F.3d at 413; *Nickey Gregory Co., LLC*, 597 F.3d at 594.

19. Here, the secured lenders and all bankruptcy professionals are on notice of the breach of the PACA trust via the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections §§105(a), 363, 503(b)(9), 507(a)(2), 541, 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Payment of Prepetition Claims Arising Under (A) the Perishable Agricultural Commodities Act, (B) the Packers and Stockyards Act, and (C) Section 503(b)(9) of the Bankruptcy Code and (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* [Docket No. 10] (the "PACA Motion").

20. In addition, it is improper to grant liens to Debtors' purported secured creditors which would prime the interests of PACA Claimants and similarly situated trust beneficiaries. Such relief is contrary to PACA because all of Debtors' assets are impressed with the PACA trust, absent evidence to the contrary. *See In re Kornblum & Co.*, 81 F.3d at 287. The party challenging the trust has the burden of proving either: (1) no PACA trust existed when the disputed assets were acquired; (2) even though a PACA trust existed at that time, the assets were not acquired with trust assets; or (3) although a PACA trust existed when the assets were acquired, and the assets were acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein. *Id.* The purpose of PACA is to ensure trust creditors are paid ahead of lenders, and Debtors improperly propose to give their purported secured lenders priority liens and adequate assurance using PACA trust assets. 7 U.S.C. § 499e(c)(1). Such relief is contrary to the express purpose of PACA's trust provision. *Id.*

21. Further, while the DIP Motion addresses how Debtors' alleged secured lenders will be protected, Debtors fail to provide adequate protection for Produce Alliance and similarly

situated PACA creditors.  The DIP Motion does not state how or when the PACA trust claims PACA Claimants will be paid, or mention PACA at all.  In fact, the DIP Agreement provides that only New York law and the Bankruptcy Code will apply – to acknowledged non-bankruptcy estate assets presumed to be subject to the PACA trust.  *See Asset Purchase Agreement, p. 23, section 12.09.*  Purportedly, PACA has no application to the DIP Motion.

22.     The proposed Interim DIP Order also provides for payment of professional fees upon demand of the secured lenders and their lien agents, without court approval, as well as a carve out for payment of bankruptcy professional fees.  As a matter of law, professionals cannot be paid while PACA creditors are unpaid.  *See C.H. Robinson*, 239 F.3d at 488 (payment to other creditors, including to PACA debtor's counsel, prior to payment to PACA trust creditors is not permitted under PACA); *Kingdom Fresh Produce v. Bexar County (In re Delta Produce, LP)*, 521 B.R. 576, 583 (W.D. Tex. 2014).[2]

23.     Additionally, Produce Alliance object to the provisions of the DIP Motion that would seek to:  stipulate that the prepetition and post-petition secured lenders liens are not subject to subordination under any applicable non-bankruptcy law, grant priming interests to insurance sureties, grant lender(s)' ability to credit bid without first establishing the $1,430,000.00 set aside, grant of relief from stay so lender(s) can foreclose in the event of Debtors' default, permit Debtors to waive section 506(c) benefits to the extent violative of the PACA, as amended, grant section 552 benefits to Debtors to the extent violative of the PACA, as amended, excluding Produce Alliance and similarly situated PACA creditors from reporting on usage of cash collateral, and removing the DIP Order from application of non-bankruptcy law involving the PACA trust.

---

[2] This decision is on appeal to the U.S. Court of Appeals for the Fifth Circuit, Case Nos. 14-51079 and 14-51080.

24. Paragraph 20 of the Proposed Interim Order provides for both Prepetition Lenders and the Postpetition Lender to use their respective Prepetition Senior Debt and Postpetition Debt to credit bid with respect to any sale of the Aggregate Collateral, all of which is presumed to be subject to the PACA trust and not assets of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996); 11 U.S.C. § 541(d).  Produce Alliance objects to the credit bid provision of the Proposed Interim Order because it fails to provide for a cash payment to Produce Alliance and similarly situated PACA trust creditors to address all PACA trust claims, and otherwise contravenes PACA.  Debtor is required under PACA:

> "…to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities.  Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act."

7 C.F.R. 46.46(d)(1).

25. In essence, Debtors are requesting that they be permitted to keep dissipating trust assets through their continued operations and payments to purported secured creditors and professionals, with no true provision made for payment of Produce Alliance and similarly situated PACA creditors' pre-petition PACA trust debt.  This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust provision of PACA.  It is contrary to federal law to reorganize using PACA trust assets.  Such trust assets must be segregated and "freely available" to satisfy sellers of produce, which the Third Circuit has established means that "liquid" assets must be available.    *Botman International, B.V. v. International Produce Imports, Inc.,* 205 Fed. Appx. 937, 942 (3d Cir. 2002).

### III. RELIEF REQUESTED

26.     Debtors must be required to demonstrate how they will adequately protect the interests of their PACA trust creditors like Produce Alliance. *See* 11 U.S.C. §363(o). Produce Alliance requests that Debtors be required to set aside sufficient monies to pay the PACA trust claims of Produce Alliance and similarly situated PACA trust creditors, which Debtors alleged totaled $1,430,000.00, in a segregated account to replace the PACA trust assets Debtors have already dissipated and to ensure sufficient funds are available to pay Debtors' PACA trust creditors.[3]

27.     Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy. Failure to do so will likely lead to Produce Alliance and similarly situated trust creditors being left with no PACA trust assets, no means of securing payment and no other adequate remedy.

### IV. RESERVATION OF RIGHTS

29.     Produce Alliance reserves the right to assert additional objections to the relief requested in the DIP Motion and Interim Order at the hearing on this matter.

### V. CONCLUSION

30.     For the foregoing reasons, Produce Alliance respectfully requests that the Debtors be required to segregate sufficient funds to pay the PACA trust claims of Produce Alliance and similarly situated PACA trust beneficiaries, and be directed to promptly pay this prepetition PACA

---

[3] PACA Claimants are entitled to payment of the full amount due under the PACA trust, which is the principal amount its PACA claim, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt. *See Coosemans Specialties, Inc. v. Garguilo*, 485 F.3d 701, 709 (2d Cir. 2007).

trust debt, and that any other relief requested in their DIP Motion be modified so as to otherwise conform to Produce Alliance's objection as set forth herein.

October 3, 2016
Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ E.E. Allinson III*
Elihu E. Allinson III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195

and

Mary Jean Fassett, Esq. *(Pro Hac Vice Pending)*
**McCarron & Diess**
4530 Wisconsin Avenue, N.W., Suite 301
Washington, DC 20016
Tel: (202) 364-0400
Fax: (202) 364-2731

*Attorneys for Produce Alliance, LLC*