# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  October 28, 2016 at 10:00 a.m. (ET)**<br>**Objection Deadline:  October 21, 2016 at 4:00 p.m. (ET)** |

**DEBTORS' SECOND (2ND) OMNIBUS MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554(a) OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES, *NUNC PRO TUNC* TO THE REJECTION DATES**

---

**ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE IDENTIFIED ON <u>EXHIBIT 1</u> TO THE PROPOSED ORDER**

---

Garden Fresh Restaurant Intermediate Holding, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby submit this motion (this "<u>Motion</u>") for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), authorizing, but not directing, the Debtors to (i) reject those certain unexpired leases of nonresidential real property (collectively, the "<u>Rejected Leases</u>") set forth on <u>Exhibit 1</u> to the proposed form of order, effective as of the dates set forth therein (collectively, the "<u>Rejection Dates</u>"), and (ii) abandon, effective as of the applicable Rejection Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "<u>Personal Property</u>") that remains, as of the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376).  The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

applicable Rejection Date, on any of the premises (collectively, the "Premises") subject to the

Rejected Leases.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the

United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief sought herein are sections 105(a), 365(a), and 554(a)

of the Bankruptcy Code and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").

## BACKGROUND

2.      On October 3, 2016 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in

possession of their properties and have continued to operate and maintain their business as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request

has been made for the appointment of a trustee or examiner, and no official committee has been

established in these chapter 11 cases.  These chapter 11 cases are jointly administered for

procedural purposes only, pursuant to Bankruptcy Rule 1015(b).

3.      Additional information about the Debtors' business and the events leading

up to the Petition Date can be found in the *Declaration of John D. Morberg in Support of*

01:19364904.3

*Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 16] (the "<u>First Day</u> <u>Declaration</u>"),[2] which is incorporated herein by reference.

<u>**RELIEF REQUESTED**</u>

4.      By this Motion, and in order to preserve and maximize the value of their estates, the Debtors seek to reject the Rejected Leases, *nunc pro tunc* to the applicable Rejection Date, as the Debtors have determined that the Rejected Leases are no longer integral to the Debtors' business operations or their chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and present burdensome liabilities.  In addition, the Debtors seek to abandon, effective as of the applicable Rejection Date, any Personal Property that remains as of such date on any of the Premises.  In light of the Debtors' efforts to preserve and maximize the value of their estates, and to avoid incurring costs and expenses that are no longer integral to the Debtors' business operations and their chapter 11 efforts, the Debtors submit that this related relief is necessary and appropriate.

<u>**BASIS FOR RELIEF**</u>

**I.      Rejection of the Rejected Leases *Nunc Pro Tunc* to the Rejection Dates Reflects the Debtors' Sound Business Judgment**

5.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  As courts have held: "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion*

---

[2]  Capitalized terms used, but not otherwise defined herein, have the meaning given to them in the First Day Declaration.

01:19364904.3

*Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

6.      The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice").  Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

7.      The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions.").  Generally, courts defer to a debtor-in-possession's business judgment to reject a lease.  *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

8.      Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Rejected Leases is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code.  *See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").  If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease.  *See, e.g., Sharon Steel Corp.*, 872 F.2d at 39–40.

9.      As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative costs in these chapter 11 cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Rejected Leases are burdensome and provide no economic value to their estates.  The Rejected Leases are unnecessary to the Debtors and their chapter 11 efforts and, if not rejected, could potentially be a drain on the Debtors' estates and a hindrance to their chapter 11 efforts.  The Debtors also believe that any continued expense in maintaining the Rejected Leases and attempting to market such agreements would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Rejected Leases and unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors.  In contrast, rejection of the Rejected Leases will represent a significant monthly cost savings to the Debtors' estates moving forward.

10.     In order to avoid paying any unnecessary expenses related to the Rejected Leases, the Debtors seek to reject the Rejected Leases *nunc pro tunc* to the respective Rejection Dates.  This Court has routinely authorized a debtor's retroactive rejection of unexpired leases. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection *nunc pro tunc* permitted to the date of the motion or the date the premises surrendered).  Generally, courts have permitted retroactive rejection of an unexpired lease when the non-debtor party to the agreement was given definite notice of the intention to reject.  *See, e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006).

11.     The facts in these chapter 11 cases and the balance of the equities favor the Debtors' rejection of the Rejected Leases *nunc pro tunc* to the Rejection Dates.  Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for leases that are not necessary to their operations or the Debtors' chapter 11 efforts.  Moreover, the counterparties to the Rejected Leases (collectively, the "Counterparties") will not be unduly prejudiced if the Rejected Leases are rejected *nunc pro tunc* to the respective Rejection Dates because the Debtors have served this Motion on the Counterparties and/or their agents or representatives by electronic mail and/or facsimile, on the date hereof, and by overnight mail, the following day, stating that the Debtors intend to reject the Rejected Leases effective as of the respective Rejection Dates.  Furthermore, with respect to any Rejected Leases, the Debtors have, or will have on or before the applicable Rejection Date, turned over the keys to the premises to the Counterparty or its representative and abandoned the premises.  Therefore, based on the Debtors' desire to eliminate the potential of administrative claims against their estates, and to avoid the potential accrual of any further obligations under the Rejected Leases, the Debtors

respectfully submit that the retroactive rejection of the Rejected Leases as of the respective Rejection Dates is appropriate.

12.     In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Leases under section 365(a) of the Bankruptcy Code, *nunc pro tunc* to the Rejection Dates, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the proposed form of order is appropriate.

## II.     Authorizing the Debtors to Abandon Any Personal Property Remaining at the Premises as of the Rejection Dates Is Appropriate

13.     In the event that any Personal Property remains on any of the Premises as of the applicable Rejection Date, the Debtors request this Court's approval of the Debtors' abandonment of that Personal Property (collectively, the "Abandoned Personal Property"), pursuant to section 554(a) of the Bankruptcy Code, with such abandonment being effective as of the applicable Rejection Date.

14.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant in this case.

15.     The Debtors submit that any Abandoned Personal Property is of inconsequential value or burdensome to the Debtors' estates to remove.  Among other things, the Debtors believe that the cost of retrieving, marketing, and reselling the Abandoned Personal

Property outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property.  As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the applicable Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.  Thus, entry of the proposed form of order is appropriate.

## NOTICE

16.    Notice of this Application has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) the Prepetition Secured Parties; (iv) the lenders under the proposed debtor in possession financing facility; (v) the Counterparties; and (vi) all parties that, as of the filing of this Application, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

01:19364904.3

## CONCLUSION

WHEREFORE, the Debtors request entry of the order substantially in the form annexed hereto as Exhibit A, granting the relief requested herein and such other and further relief to the Debtors as is just and proper.

Dated: October 7, 2016
      Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**
Neil E. Herman
James O. Moore
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

- and -

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Ian J. Bambrick*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600

*Proposed Counsel to the Debtors and Debtors in Possession*

01:19364904.3