## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (CSS) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 103 and 126** |

## ORDER (I) AUTHORIZING AND APPROVING BID PROCEDURES, (II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT AND DETERMINING CURE AMOUNTS

Upon the motion (the "Motion") of Garden Fresh Restaurant Intermediate

Holding, LLC and certain of its subsidiaries, the debtors and debtors in possession (collectively,

the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), for

entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United

States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (i) authorizing and approving certain proposed bidding procedures

(as attached hereto as **Exhibit 1**, the "Bid Procedures")[2] governing the submission of competing

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion, the First Day Declaration, the Bid Procedures or the Stalking Horse APA, as applicable.

proposals to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code,

(ii) authorizing and approving the Debtors' entry into (but not consummation of) the Asset

Purchase Agreement (substantially in the form filed with the Court on November 14, 2016

[Docket No. 347] and attached to the Bid Procedures as **Exhibit A** and, together with all exhibits

and schedules thereto, as amended from time to time in accordance with the terms thereof, the

"Stalking Horse APA"), by and among the Debtors and GFRC Acquisition LLC, a Delaware

limited liability company (together with its permitted designees, successors and permitted

assignees in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), an affiliate

of the TLA Lenders, pursuant to which the Debtors have agreed to sell the Purchased Assets to

the Stalking Horse Bidder, subject to the terms and conditions contained in the Stalking Horse

APA, (iii) approving the form and manner of notice of the sale of the Purchased Assets,

(iv) scheduling a hearing for approval of the sale of the Purchased Assets (the "Sale Hearing")

and setting other dates and deadlines related thereto and (v) approving procedures for the

assumption and assignment of the Debtors' executory contracts (the "Contracts") and unexpired

leases (the "Leases") and the form and manner of notice of proposed cure amounts; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors' estates;

and after due deliberation, and good and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated as of February 29, 2012.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution.  Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

01:19513706.2

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1.

D.      Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b) and all other interested parties.

E.      The Debtors have articulated good and sufficient reasons for the Court to approve the Bid Procedures.  Such good and sufficient reasons were set forth in the Motion, are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors' estates and creditors.  The Bid Procedures and all such steps and expenses incurred by the Debtors in connection with the implementation of the Bid Procedures and this Order shall be deemed reasonable and appropriate and within the sound business judgment of the Debtors pursuant to section 363(b) of the Bankruptcy Code.

G.      The Stalking Horse APA was entered into in good faith by the Debtors and the Stalking Horse Bidder, and is the result of an arms-length negotiation between the parties that are each represented by sophisticated legal counsel.

H.      The Stalking Horse Bidder (or Cerberus Business Finance, LLC, the DIP Agent and the TLA Agent, on behalf of the Stalking Horse Bidder, the DIP Lenders and TLA Lenders, as applicable) is entitled to credit bid any and/or all amounts of the obligations owed under the DIP Credit Agreement and any and/or all amounts of the TLA Obligations; provided, however,

that such credit bid shall remain subject in all respects to the rights of the Committee to assert a Challenge (as defined in the Court's final DIP financing order entered concurrently herewith).

I.    The Debtors have demonstrated sound business justifications for entering into the Stalking Horse APA and incurring the administrative obligations arising thereunder or in connection therewith, and the timing and procedures set forth therein.

J.    The Motion does not seek approval of any break-up fee, expense reimbursement or other bid protections (collectively, "Bid Protections") to the Stalking Horse Bidder and the Court is not approving payment of any Bid Protections pursuant to this Order.

K.    The sale of the Purchased Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors' estates and represents a reasonable exercise of the Debtors' sound business judgment.

L.    The *Notice of Sale, Bid Procedures, Auction and Sale Hearing* (the "Sale Notice"), substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the date, time and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors and (viii) notice of the proposed assumption and assignment of Contracts and Leases in connection with the Sale pursuant to the

Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto.  No other or further notice of the proposed sale shall be required.

      M.    The *Amended Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* (the "Cure Notice") attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Contracts and Leases with proper notice of the potential assumption and assignment of their Contract or Lease, the proposed cure amounts relating thereto and the related assumption and assignment procedures; provided that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.  Such service of the Cure Notice is good and sufficient notice thereof and no further notice thereof is required.[3]

      N.    The Bid Procedures comply with the requirements of Local Rule 6004-1.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is hereby GRANTED as set forth herein.

2.    All objections filed, if any, in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, resolved, or specifically addressed in this

---

[3] The Debtors previously filed and served a cure notice on non-Debtor counterparties to the Contracts and Leases on October 21, 2016.  That prior cure notice set forth deadlines that are not being approved by this Court pursuant to this Order.  Non-Debtor counterparties to the Contracts and Leases shall be notified of the approved deadline to file and serve Cure Objections in the Cure Notice and in the Sale Notice required to be served by this Order.  Such counterparties will also be given notice of the approved deadline to object to adequate assurance with respect to non-stalking horse bidders in the Sale Notice, and will be informed when the Debtors shall serve them with adequate assurance information for the Stalking Horse Bidder and for other bidders in the Sale Notice.

Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

### The Bid Procedures

3.      The Bid Procedures, attached hereto as **Exhibit 1**, are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

4.      The Bid Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of this Order and the Bid Procedures.

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

    a.    **Preliminary Bid Deadline:  December 2, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which anyone interested in participating in the bidding process must deliver the Preliminary Bid Documents;

    b.    **Qualified Bid Deadline:  December 6, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bid Procedures (the "Bid Deadline"); and

    c.    **Auction:  December 8, 2016 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time of the Auction, if one is needed, which will be held at the offices of **Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178,** and may be attended by any and all creditors of the Debtors who provide written notice to Debtors' counsel no later than one Business Day prior to the Auction; provided, however, that the Debtors, in their discretion, shall have the right to hold the Auction at another place (which shall be in New York, New York), or on such other date as determined by the Debtors, with the prior consent of the Committee and the Stalking Horse Bidder (not to be unreasonably withheld, conditioned or delayed) with notice to all Qualified Bidders and any other invitees, including all creditors that provide timely written notice of intent to attend the Auction.

6.      Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction.  As described in the Bid Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder, and the Debtors will seek final approval at the Sale Hearing of the sale of the Purchased Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

7.      If the Auction is conducted, (i) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale, (ii) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder and (iii) the Auction shall be conducted openly and shall be transcribed or videotaped.  By the earlier of (i) 24 hours following the close of the Auction or (ii) the close of business on December 9, 2016, the Debtors shall file a notice identifying the Successful Bidder and serve such notice by fax, email or (if neither is available) FedEx to all counterparties to Contracts or Leases (and their counsel, if known) and by fax or email to all creditors of the Debtors who have requested the same in writing and provided their fax number, email address or street address, as applicable, to Debtors' counsel.

### Approval of Debtors' Entry into the Stalking Horse APA

8.      The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse APA; provided that, for the avoidance of doubt, consummation of the transactions contemplated by the Stalking Horse APA shall be subject to entry of an order approving the sale of the Purchased Assets (the "Sale Order") and the

satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse APA.

## Hearing and Objection Deadlines

9.     The Sale Hearing shall take place in this Court on **December 15, 2016 at 1:00 p.m. (Prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda.  Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

10.     If the Successful Bidder fails to consummate the proposed transaction, parties shall be given at least seven (7) days' notice and opportunity to object to the sale to the Back-Up Bidder.  For the avoidance of doubt, the scope of the hearing on approval of the sale to the Back-Up Bidder shall be limited to issues relating to the identity of the Back-Up Bidder such as adequate assurance and assignments of Contracts or Leases to the Back-Up Bidder.

11.     Except as otherwise set forth herein or in the Bid Procedures or Stalking Horse APA with respect to (i) matters arising under Contracts and Leases following the Closing, (ii) the assignment of Contracts and Leases to the Successful Bidder (other than the Stalking Horse Bidder) or (iii) objections to proposed cure amounts (each, a "Cure Objection"), the deadline to file objections, if any, to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order, including objections to the assignment of Contracts and Leases to the Stalking Horse Bidder, is **December 9, 2016 at 4:00 p.m. (Prevailing Eastern Time)**.  Objections to proposed cure amounts set forth in the Cure Notice must be filed by **November 29, 2016 at 4:00**

**p.m. (Prevailing Eastern Time)** (the "Cure Objection Deadline").  Other than objections to

proposed cure amounts set forth in the Cure Notice, objections to the assignment of Contracts

and Leases to the Successful Bidder (other than the Stalking Horse Bidder) must be filed by

**December 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)**.  Objections, if any, **must**:  (i) be

in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules

and any orders of the Court, (iii) state with particularity the legal and factual basis for the

objection and the specific grounds therefor and (iv) be filed with the Court and served so as to be

**actually received** no later than the deadlines described in this paragraph 11, as applicable, by the

following parties (the "Notice Parties") who may be served by email at the addresses indicated

below: (a) the Debtors: Garden Fresh Restaurant Intermediate Holding, LLC, 15822 Bernardo

Center Drive, Suite A, San Diego, CA 92127, Attn: John D. Morberg

(jmorberg@gardenfreshcorp.com); (b) counsel to the Debtors: Morgan Lewis & Bockius LLP,

101 Park Avenue, New York, NY 10178, Attn: Neil E. Herman, Esq.

(neil.herman@morganlewis.com), James O. Moore, Esq. (james.moore@morganlewis.com) and

Katherine L. Lindsay Esq. (katherine.lindsay@morganlewis.com), and Young Conaway Stargatt

& Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801; Attn:

Michael R. Nestor, Esq. (mnestor@ycst.com), Kenneth J. Enos, Esq. (kenos@ycst.com) and Ian

J. Bambrick, Esq. (ibambrick@ycst.com); (c) the Office of the United States Trustee for the

District of Delaware (the "US Trustee"): 844 King Street, Room 2207, Wilmington, Delaware

19801; Attn: Juliet M. Sarkessian, Esq. (Juliet.M.Sarkessian@usdoj.gov); (d) proposed counsel

to the official committee of unsecured creditors appointed in the Cases (the "Committee"):

Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: Jason R. Adams,

Esq. (JAdams@KelleyDrye.com) and Eric R. Wilson, Esq. (EWilson@KelleyDrye.com);

(e) counsel to the DIP Agent, the TLA Agent, and the Stalking Horse Bidder: (i) Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin, Esq. (Mtuchin@ktbslaw.com) and David M. Guess, Esq. (Dguess@ktbslaw.com) and (ii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Esq. (collins@rlf.com); (f) counsel to the TLB Lenders: (i) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Jayme T. Goldstein, Esq. (jgoldstein@stroock.com) and Daniel P. Ginsberg, Esq. (dginsberg@stroock.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com); (g) counsel to the TLB Agent: Holland & Knight LLP, 131 South Dearborn Street, 30th Floor, Chicago, IL 60603, Attn. Joshua Spencer, Esq. (joshua.spencer@hklaw.com); (h) the financial advisor to the Debtors: Piper Jaffray & Co., 2321 Rosecrans Avenue, Suite 3200, El Segundo, CA 90245, Attn: Teri Stratton (Teri.L.Stratton@pjc.com) and Jean Hosty (Jean.E.Hosty@pjc.com), and (i) counsel to the TLC Agent and the TLD Agent: Vinson & Elkins LLP, 666 Fifth Avenue, 26th Floor, New York, NY 10103, Attn: Steve M. Abramowitz, Esq. (SAbramowitz@velaw.com).

12.    The deadline for filing a response to any timely-filed objection to entry of the Sale Order, including objections to the assignment of Contracts and Leases to the Stalking Horse Bidder, or any timely-filed Cure Objection is **December 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)**; provided that such deadlines may be extended by agreement of the Debtors and the affected objecting party.

13.    The sale timetable established pursuant to this Bid Procedures Order, including objection deadlines and the date of the Auction, is attached hereto as **Schedule 1**.

## Sale Notice and Related Relief

14.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) days of the entry of this Order, the Debtors shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) counsel to the Committee, (iii) counsel to the Stalking Horse Bidder, (iv) counsel to each of the TLB Agent, the TLB Lenders, the TLC Agent, the TLC Lenders, the TLD Agent and the TLD Lenders, (v) the Internal Revenue Service, (vi) any parties who have expressed a written interest in the Debtors' assets, (vii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Purchased Assets, if any, (viii) all applicable state and local taxing authorities in the jurisdictions in which the Debtors may have tax liability, (ix) each governmental agency that is an interested party with respect to the sale of the Purchased Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (x) each counterparty to the Debtors' Contracts and Leases (or to known counsel), (xi) all individuals who current serve or served as employees of the Debtors in the four years before the commencement of these Cases and (xii) all parties who have requested notice under Bankruptcy Rule 2002.  In addition, as soon as practicable, but in any event no later than five business (5) days after entry of this Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in the United States edition of *USA Today* or the National Edition of *The New York Times*.  The Motion, together with all exhibits and schedules, the Bid Procedures Order, the Bid Procedures, and the Cure Notice will be posted on a page of the website maintained by the claims agent in connection with these cases that is dedicated to the sale (respectively, the "Website" and the "Sale Page"). A link to the Sale Page shall be clearly and prominently listed on the Website, and the Website shall be disclosed in the Sale Notice and

01:19513706.2

Cure Notice. The foregoing methods of such service shall constitute good and sufficient notice of the Sale of the Purchased Assets, this Order, the Auction and all proceedings held thereon.

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

15.     In connection with the sale of the Purchased Assets pursuant to the Stalking Horse APA, the Debtors shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time. Based on the evidence presented at the hearing, this Court finds that, as of the Petition Date, and since at least December 13, 2010, the Debtors have had a privacy policy published on their public website stating that the Debtors may disclose a customer's personal information upon a transfer or sale to another entity of all or substantially all of the Debtor's assets or stock. Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

### Assumption Procedures

16.     The procedures set forth below regarding the proposed assumption and assignment of certain Contracts and Leases that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse APA, collectively, the "Assigned Contracts") in connection with the sale of the Purchased Assets are hereby approved (the "Assumption Procedures").

17.     These Assumption Procedures, as may be modified or supplemented by the Sale Order, shall govern the assumption and assignment of all Assigned Contracts:

    a.      **Cure Notice.** The Cure Notice in the form annexed hereto as Exhibit 3 is hereby approved. The Cure Notice shall inform each recipient that its respective Contract or Lease may be designated as either assumed or rejected and the timing and procedures relating to such designation, and,

to the extent applicable (i) the title of the Contract or Lease, (ii) the name of the counterparty to the Contract or Lease, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Contract or Lease as of the anticipated Closing Date and (iv) the deadline by which any such Contract or Lease counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease. If the Debtors identify additional Contracts or Leases that might be assumed by the Debtors and assigned in connection with the Sale, the Debtors will promptly send a supplemental Cure Notice to the applicable counterparties to such Contract or Lease. In no instance shall a counterparty have less than fourteen (14) calendar days from the date of service of such supplemental Cure Notice to object to the cure amount or to the assumption and assignment of the subject Contract or Lease.

b.    **Adequate Assurance**. The Debtors shall serve on affected counterparties and their respective known counsel by overnight mail (or by electronic mail, if available) no later than November 22, 2016 the evidence of adequate assurance of future performance under the Contracts and Leases provided in connection with the Stalking Horse Bid, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Contracts and Leases and a contact person with the proposed assignee whom counterparties may contact if they wish to obtain further information regarding the proposed assignee. On or before December 5, 2016, the Debtors shall serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail similar adequate assurance information provided by each Potential Bidder. If any Interested Party becomes a Potential Bidder after 5:00 p.m. (Prevailing Eastern Time) on December 2, 2016, the Debtors shall serve by overnight mail (or by electronic mail, if available) on each affected non-Debtor counterparty to an executory contract or unexpired lease to be assumed and assigned in connection with the proposed transaction similar information supporting such Potential Bidder's ability to comply with the requirements to provide adequate assurance of future performance within one (1) Business Day of receipt of such information.

c.    **Objections**. Objections, if any, to the proposed assumption and assignment of any Contract or Lease or to the cure amount proposed with respect thereto must: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the

Court and served so as to be **actually received** by the Notice Parties before the applicable objection deadline. Service on the Notice Parties may be by email.

d. **Dispute Resolution**. Any objection to the proposed assumption and assignment or related cure of a Contract or Lease in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on counsel to the affected counterparty by email and the Successful Bidder shall be responsible for all costs with respect to such Contract or Lease through the assumption or rejection of such Contract or Lease to the extent set forth in the Successful Bidder's asset purchase agreement. To the extent any such objection is resolved or determined unfavorably to the applicable Debtor, the Debtors may, subject to the terms of an agreement with the Successful Bidder, reject the applicable Contract or Lease after such determination.

e. **Assumption and Assignment Notice**. The *Notice of Assumption and Assignment of Unexpired Leases and Executory Contracts* (the "Assumption and Assignment Notice") attached hereto as **Exhibit 4** is hereby approved. On or before the Closing Date, the Debtors shall file with the Court and serve via first class mail the Assumption and Assignment Notice on all non-Debtor counterparties to Contracts and Leases, and their respective known counsel, and provide a copy of same to the Successful Bidder. The Assumption and Assignment Notice shall inform each recipient that its respective Contract or Lease is assumed and assigned, and, to the extent applicable (i) the title of the Contract or Lease, (ii) the name of the counterparty to the Contract or Lease, (iii) the Determined Cure Costs with respect to each Contract or Lease and (iv) the identity of the Successful Bidder. Upon filing an Assumption and Assignment Notice, and without further order of the Court, but subject to a counterparty's right to object as set forth in this Order, each Contract or Lease listed in such Assumption and Assignment Notice (a) shall be treated as an Assigned Contract under the Sale Order, and (b) shall be assumed by the Debtors and assigned to Successful Bidder upon payment of the cure amount unless otherwise agreed by the relevant counterparty. With respect to the Contracts and Leases listed on the Assumption and Assignment Notice, absent an order of the Court to the contrary, (1) the applicable cure amount for each Contract or Lease listed on such Assumption and Assignment Notice shall be fixed at the amount set forth on such Assumption and Assignment Notice, and the applicable contract counterparty to such Contract or Lease shall be forever bound by such cure amount, provided, that the cure amount shall not be less than the amount set forth in the Cure Notice absent order of this Court or consent of the counterparty to such Contract or Lease; (2) pursuant to sections

365(b)(1)(A) and (B) of the Bankruptcy Code, the Successful Bidder shall pay to the applicable contract counterparty the cure amount relating to each Contract or Lease listed on such Assumption and Assignment Notice, unless otherwise agreed to between the Successful Bidder and the applicable contract counterparty to a Contract or Lease and (3) upon payment of such cure amounts as provided for herein, the applicable contract counterparty is hereby enjoined from taking any action against Successful Bidder or the Purchased Assets with respect to any claim for cure costs.

f.      **Post-Closing Assumption and Assignment**.  In the case of any Contracts and Leases that the Debtors seek to assume and assign after the Closing Date pursuant to the Stalking Horse APA (or the asset purchase agreement of the Successful Bidder), within three (3) Business Days following receipt of a notification by the Successful Bidder that a Contract or Lease is designated for assumption and assignment, the Debtors shall file with the Court a written supplemental Cure Notice of the Debtors' intent to assume and assign such Contract or Lease, substantially in the form of the Cure Notice.  The Debtors shall serve such supplemental Cure Notice via first class mail (except as set forth in subsection (i), which shall be by overnight mail) on each of the following parties (the "Supplemental Cure Notice Parties"): (i) each counterparty to any such Contract or Lease (and their known counsel) to be assumed or assigned by the Debtors, (ii) the U.S. Trustee, (iii) counsel to the Committee, and (iv) counsel to the Stalking Horse Bidder or other Successful Bidder, as applicable.  The Debtors shall also serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail adequate assurance information for the Successful Bidder.

The supplemental Cure Notice shall set forth the following information, to the best of the Debtors' knowledge: (i) the street address of the real property that is the subject of any Lease that the Debtors seek to assume and assign or a description of the Contract that the Debtors seek to assume and assign, (ii) the name and address of the affected counterparties (and their known counsel), (iii) a description of the deadlines and procedures for filing objections, if so permitted pursuant to the Assumption Procedures set forth herein, to the supplemental Cure Notice (as set forth below), and (iv) any proposed cure amounts as of that time.

A party in interest may object to a supplemental Cure Notice solely with respect to (i) the proposed cure amount contained therein but only to the extent such objection could not have been raised prior to the Cure Objection Deadline, or (ii) adequate assurance of future performance. Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Supplemental Cure Notice Parties no later than 14 calendar days after the date the Debtors served the applicable supplemental Cure Notice.

If no permitted objection is timely filed and served with respect to the supplemental Cure Notice, any non-Debtor party to such Contract or Lease shall be deemed to have consented to the cure amount set forth in such supplemental Cure Notice. If a permitted objection is timely filed and served on the Supplemental Cure Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection. The assumption and assignment of any Contract or Lease set forth in a supplemental Cure Notice shall be deemed to have occurred as of the date of filing of a supplemental Cure Notice upon payment of the cure amount unless otherwise agreed by the relevant counterparty.

The Successful Bidder shall be responsible for the payment of all cure amounts for any Contract or Lease that is assumed and assigned to the Successful Bidder.

18.     The Cure Notice is good, sufficient and appropriate under the circumstances and, except as set forth herein, no other or further notice is, or shall be, required.

19.     *Absent further order of this Court to the contrary, any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or any supplemental Cure Notice or to the assumption and assignment of a Contract or Lease (i) shall be forever barred, estopped and enjoined from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Contract or Lease and (b) asserting that the Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order or the deadline to object to the supplemental Cure Notice, as applicable, (ii) shall be deemed to consent to (a) the sale of the Purchased Assets as approved by the Sale Order and (b) the assumption and assignment of the Contracts and Leases and (iii) shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee of the relevant Contract or Lease*

*that any conditions to assumption and assignment of such Contract or Lease have not been*

*satisfied (pursuant to section 365 of the Bankruptcy Code or otherwise).*

20.    The proposed assumption and assignment of the Assigned Contracts and the Auction shall be conducted solely in accordance with the provisions of this Order, the Bid Procedures and the Assumption Procedures, as applicable.

21.    All notices and information sent to non-Debtor counterparties shall be sent to the notice addresses set forth in the respective Contracts and Leases in addition to their respective counsel, if known.

22.    Nothing in this Order shall be construed to modify the requirements and provisions of sections 365(b), 365(d)(3), 365(d)(4) or 365(f) of the Bankruptcy Code, or to determine the effective date of rejection for any Contract or Lease which the Debtors may seek to reject.

## Other Relief Granted

23.    The Debtors are authorized to execute and deliver all instruments and documents and take such other actions, as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

24.    The Stalking Horse Bidder has standing to enforce the terms of this Order.

25.    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

26.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

01:19513706.2

27.     To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control.

28.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon entry hereof.

29.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: November 15, 2016
      Wilmington, Delaware

                                                    Christopher S. Sontchi
                                                   UNITED STATES BANKRUPTCY JUDGE