# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-12174 (CSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MICHAEL DORSEY IN SUPPORT OF ENTRY OF ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (II) APPROVING THE STALKING HORSE APA; AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

I, Michael Dorsey, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1. I am a Vice President and the Controller of Garden Fresh Restaurant Corp., one of the above-captioned debtors and debtors in possession (collectively, the "Debtors").[2] In this capacity, I am familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2. The facts set forth in this declaration ("Declaration") are based upon my personal knowledge, information and belief, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors, and upon

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376). The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive Suite A, San Diego, California 92127.

[2] All capitalized terms not defined herein shall have the meaning ascribed in the Motion or in the Bid Procedures Order (each of which is defined below).

01:21379389.2

information supplied to me by the Debtors' advisors. If called as a witness, I could and would testify competently to the facts set forth herein.

3. I submit this Declaration in connection with the *Debtors' Motion for Orders (A)(I) Authorizing and Approving Bid Procedures; (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse APA; (III) Approving Notice Procedures; (IV) Scheduling a Sale Hearing; and (V) Approving Procedures for Assumption and Assignment and Determining Cure Amounts and (B)(I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (II) Approving the Stalking Horse APA; and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 103] (the "Motion").

4. The Debtors seek approval of a proposed sale (the "Sale Transaction") of substantially all of the assets of the Debtors (the "Purchased Assets") to GFRC Holdings LLC (f/k/a GFRC Acquisition LLC) (together with its direct and indirect subsidiaries, Garden Fresh Restaurants LLC and GFRC Promotions LLC, "GFRC") pursuant to the terms of that certain Asset Purchase Agreement dated November 14, 2016 (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto) [Docket No. 347] (the "GFRC APA"), by and among the Debtors and GFRC. GFRC is an affiliate of the TLA Lenders, who, since the execution of the GFRC APA, are also the Debtors' DIP Lenders.

5. As more fully described in the *Declaration of Teri Stratton in Support of Entry of Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (II) Approving the Stalking Horse APA; and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases*, filed contemporaneously herewith, the Debtors, with the aid of their advisors,

including Piper Jaffray & Co. ("PJC"), engaged in an extensive marketing process to sell the Purchased Assets both prior to and subsequent to the Petition Date. The Debtors believed that a robust public sale process would result in the highest and best price for the Purchased Assets and would best allow the Debtors to maximize the value of their estates.

6. After an extensive prepetition marketing process, the Debtors began negotiations with certain of their TLB Lenders (the "TLB Purchaser"), who expressed interest in submitting a bid for the sale of the Purchased Assets. After extensive negotiations, the Debtors and the TLB Purchaser entered into a Restructuring Support Agreement, under which the TLB Purchaser would serve as a stalking horse for the Purchased Assets and, if ultimately the successful purchaser under the terms of the proposed Bid Procedures, would acquire the Purchased Assets and certain of the Debtors' liabilities subject to certain conditions precedent.

7. The TLB Purchaser ultimately determined not to proceed with the purchase of the Purchased Assets. Accordingly, on November 14, 2016, following discussions between the Debtors, the TLB Purchaser, the TLA Lenders and the TLA Agent, the parties agreed to the termination of the Stalking Horse Purchase Agreement, in accordance with section 3.4(a) thereof. Because of the concern that the TLB Purchaser would terminate the Stalking Horse Purchase Agreement, the Debtors had been conducting negotiations with the TLA Lenders regarding their interest in purchasing the Purchased Assets for several weeks. After extensive negotiations, conducted in good faith with all parties represented by counsel, the Debtors and GFRC, an affiliate of the TLA Lenders, reached agreement on the terms of GFRC APA.

8. On November 15, 2015, the Court entered its *Order (A)(I) Authorizing and Approving Bid Procedures; (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse APA; (III) Approving Notice Procedures; (IV) Scheduling a Sale Hearing; and*

*(V) Approving Procedures for Assumption and Assignment and Determining Cure Amounts* [Docket No. 354] (the "Bid Procedures Order").

9. The Debtors, with consent of the Consultation Parties and in an effort to encourage competitive bidding, extended the Bid Deadline on two (2) separate occasions to allow potential bidders additional time to perform diligence and to meet with management. However, as of the Bid Deadline (and as of the date hereof), the Debtors have received no bids for the Purchased Assets other than the bid by GFRC as reflected in the GFRC APA. In accordance with the Bid Procedures Order, the Debtors did not hold an auction and declared GFRC to be the Successful Bidder. Therefore, the Debtors are proceeding with the GFRC APA.

10. The Debtors have determined in accordance with their business judgment and the Bid Procedures Order and the Bid Procedures, in consultation with the Consultation Parties (as defined in the Bid Procedures), and I believe, that GFRC's bid was the sole Qualified Bid and represents the highest and best offer for the Purchased Assets. As a result, the Debtors declared GFRC the Successful Bidder in a notice filed with this Court [Docket No. 486] (the "Notice of Successful Bidder") and cancelled the Auction. I believe that the terms contained in the GFRC APA provide a greater recovery for the Debtors' estates for the Purchased Assets than would be provided by any other available alternative, and that the GFRC APA represents a fair and reasonable offer to purchase the Purchased Assets. No other entity or group of entities has presented a higher or otherwise better offer to the Debtors to purchase the Purchased Assets for greater economic value to the Debtors' estates than GFRC. Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the consideration provided by GFRC under the GFRC APA, I believe that the Sale constitutes a reasonable and sound exercise of the

Debtors' business judgment, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be approved.

11. I further believe that the Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets outside the ordinary course of business, and that the Sale is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The sound business reasons for the Sale include, but are not limited to, that: the GFRC APA constitutes the highest and best offer for the Purchased Assets; the GFRC APA and the closing thereon will present the best opportunity to realize the value of the Purchased Assets; and any other transaction would not have yielded as favorable an economic result.

12. In my opinion, the Debtors and GFRC have acted in good faith in connection with the GFRC APA, and GFRC otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that, among other things: the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; GFRC complied with the provisions of the Bid Procedures Order; GFRC's bid was subject to the competitive bid procedures set forth in the Bid Procedures Order; all payments to be made by GFRC and other agreements or arrangements entered into by GFRC in connection with the Sale have been disclosed; and the negotiation and execution of the GFRC APA, including the Sale Transaction contemplated thereby, were at arm's-length and in good faith. In my opinion, there has been no insider influence or improper conduct by GFRC or any of its affiliates in connection with the negotiation of the GFRC APA with the Debtors. It is also worth noting that at all times the Debtors and GFRC were each represented by separate counsel and GFRC and its affiliates are

not now and have never been shareholders, members, managers, directors, officers, corporate affiliates, persons in control, or insiders of the Debtors. Finally, the Committee and its advisors have been extensively engaged in the negotiations over the GFRC APA and the proposed Sale Order, and I understand that the Committee supports the Sale of the Purchased Assets to GFRC.

13. Except as otherwise provided for in the GFRC APA, the Debtors are seeking the sale of their assets free and clear of all liens, claims, encumbrances, and other interests, including, without limitation, successor liability. I believe that GFRC would not have entered into the GFRC APA and would not consummate the Sale Transaction if the Sale of the Purchased Assets was not free and clear of all such interests. Moreover, not selling the Purchased Assets free and clear of all such liens, claims, encumbrances, and other interests would adversely impact the Debtors' efforts to maximize the value of their estates because the purchase price for the Purchased Assets would be significantly reduced. As a result, if the Sale of the Purchased Assets were other than a sale free and clear of all such interests, such a sale would be of substantially less benefit to the Debtors' estates.

14. In my opinion, the sale of the Purchased Assets to GFRC pursuant to the terms of the GFRC APA is the best way to maximize and preserve the value of the Purchased Assets for the Debtors' estates. The consummation of the Sale Transaction is necessary both to preserve and maximize the value of the Purchased Assets for the benefit of the Debtors, their estates, their creditors, interest holders and all other parties in interest in these chapter 11 cases, and to provide the means for the Debtors to maximize creditor and interest holder recoveries. Further, the Sale Transaction retains the going concern business for the benefit of the Debtors' landlords and trade creditors, taxing authorities, customers, and of course, our employees.

15. In summary, the Sale Transaction is the only avenue by which the Debtors can, with any degree of certainty, maximize the value of the Purchased Assets for their estates within a reasonable period of time. The Sale Transaction is the culmination of extensive, arm's-length, good faith, and vigorous negotiations, and should without reservation be approved in all respects.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge and belief.

Dated: January 6, 2017
      San Diego, California

                                              */s/ Michael Dorsey*
                                              Michael Dorsey
                                              Vice President and Controller
                                              Garden Fresh Restaurant Corp.
                                              15822 Bernardo Center Drive Suite A
                                              San Diego, California  92127