**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------x
In re:                                                                              Chapter 11

Fresh-G Fresh Restaurant Intermediate                           Case No. 16-12174 (CSS)
Holding LLC et al,

                       Debtors.                                 (Jointly Administered)

                                                                        Hearing Date: 10/31/17 @ 10 a.m.
                                                                        Re: D.I. 361, 421 & 460
-----------------------------------------------------------x

**SUPPLEMENT TO OBJECTION OF
DK CONNECTIONS LLC TO PROPOSED SALE,
AND RELATED ASSUMPTION AND ASSIGNMENT OF
SHOPPING CENTER LEASE**

       DK Connections LLC (collectively, the "Landlord") by and through its attorneys, Goldberg Weprin Finkel Goldstein LLP and The Rosner Law Group LLC, supplementing its prior objections (D.I. 421 & 460) to the Debtors' November 17, 2016 *Notice of Possible Treatment of Contracts and Leases* (D.I. 361) (the "Notice"), states and alleges as follows:

**PRELIMINARY STATEMENT**

       1.     The Debtors seek to consummate a proposal assumption and assignment of a certain lease between one of the Debtors as tenant and the Landlord, relating to premises at the Beverly Connection Shopping Mall, La Ciegna Boulevard, Los Angeles, CA (the "Premises").

       2.     The issue of assumption and assignment is not as simple as the Debtors suggest, since the subject lease, dated May 2, 2006 (the "Lease") expires on January 31, 2018, by reason of the Debtors' ineffective exercise of an option for a five year extension.

       3.     The plain language of the Lease (i) requires that the option for an extension be exercised no later than one year prior to the termination date, and (ii) bars the tenant from exercising the option if it is in default. Here, the Debtors were in default of payment of both pre-

{00021375. }

petition and post-petition rent and additional rent due under the Lease at the time it sought to exercise the option on January 27, 2017.

4. Since the time to exercise the option has expired, the Lease term will quickly come to an end, and the proposed assumption and assignment cannot be used as a back door vehicle to revive an already expired option to renew.

5. The case law addressing the effect of a post-petition default on the exercise of a lease option is sparse. However, one court, *In re Leisure Corp.*, 234 B.R. 916 (9th Cir. BAP 1999), has held that the failure of a debtor to comply with the requirements of Section 365(d)(3) to remain current with its post-petition lease obligations while the debtor is determining whether to assume or reject the lease, is a factor which must be considered by the Court in determining whether to permit the exercise of the option.

6. In this case, the Lease is governed by California law (Lease Article 17.11), which strictly construes option clauses. Accordingly, the Landlord respectfully submits that the failure of the Debtors to be current with their post-petition rent obligations bars the exercise of the lease option. The Debtors may be permitted to assume and assign the Lease, subject to the original maturity date of January 31, 2018.

## BACKGROUND FACTS

7. The facts are not in dispute. The Landlord is the owner of the Premises which have been leased to Garden Fresh Restaurant Corp. d/b/a Souplantation (Case No. 16-12177), as tenant (hereinafter, the "Tenant). The Premises were leased to the Tenant pursuant to the subject Lease by the Landlord's predecessor in interest, Bevcon I, LLC. A copy of the Lease is annexed hereto as <u>Exhibit</u> "A". The Lease was subsequently assigned to the Landlord.

8. Pursuant to Article 2.1 of the Lease, as confirmed by the Certificate of Commencement annexed hereto as <u>Exhibit</u> "B", the Lease term commenced on February 4, 2008 and expires on January 31, 2018.

9. Pursuant to Article 2.2 of the Lease, the Tenant has the option to extend the Lease for two five-year periods, under the following terms and conditions:

> 2.2 <u>Options to Extend.</u> To the extent that such option(s) is (are) reflected in Paragraph H, Landlord grants to Tenant the option(s) ("Option(s)") of extending the Initial Term for the Extension Period(s) described In Paragraph H pursuant to the terms set forth herein. With respect to any and each Extension Period; Tenant may exercise the Option by giving Landlord notice (in the manner prescribed by Section 17.3) of Tenant's irrevocable exercise of the Option not more than eighteen (18) months nor less than twelve (12) months in advance of the prospective Extension Period. Failure to effectively exercise the Option for any Extension Period shall automatically terminate and nullify the Option for such Extension Period and any subsequent Extension Period.
>
> Tenant's right to exercise the Option for any Extension Period is subject to satisfaction of the following conditions precedent: (i) this Lease shall be in effect at the time notice of exercise of the Option Is given and on the last day of the Term prior to its extension; (ii) Tenant shall not be in Default (as defined in Section 13.1) under any provision of this Lease at the time notice of *exercise* of the Option is given nor shall a Default exist as of the last day of the Term prior to its extension; (iii) an Uncured Default (as defined in Section 13.2) shall not have occurred at any time during the Term; (iv) the notice of exercise of the Option shall be delivered in strict compliance with the requirements and limitations set forth in this Section; and (v) Tenant is open and operating its business In the Premises on a full-time basis as of the date that notice of exercise of the Option Is given and throughout the period thereafter through and Including the day the subject Extension Period Is to commence. Any Option shall immediately and automatically terminate and shall be of no further force or effect In the event that this Lease is terminated in accordance with the terms and provisions of this Lease.

10. On October 3, 2016, the Tenant commenced the instant Chapter 11 case, which is being jointly administered with its affiliates pursuant to Order dated October 4, 2016 (D.I. 4).

11. Thereafter, pursuant to Notice dated November 17, 2016 (D.I. 360 & 361), the Debtors moved, *inter alia*, to assume and assign the Landlord's lease through an auction sale. The Landlord filed a limited objection to the proposed sale (D.I. 421) together with an objection to the adequate assurance of future performance by the proposed buyer, GFRC Acquisition, LLC ("GFRC") (D.I. 460).[1]

12. While the parties were discussing the proposed assumption and assignment of the Lease, the Tenant purported to exercise the first option for a five year extension of the Lease running from February 1, 2018 through January 31, 2023, by letter dated January 27, 2017, a copy of which is annexed hereto as Exhibit "C".

13. This letter was rejected by the Landlord pursuant to letter dated February 1, 2017, on the ground that the Tenant was then in default of the Lease by reason of its failure to pay certain rent and additional rent due to the Landlord in the total amount of $138,428.61. A copy of the rejection letter is annexed hereto as Exhibit "D".

14. These defaults included the following:

| Invoice Date | Charge | Amount of Invoice |
| --- | --- | --- |
| | Pre-petition rent and additional rent: | |
| 9/1/2016 | September 2016 CAM | $12,136.49 |
| 9/1/2016 | September 2016 Base Rent | $32,341.87 |
| 9/2/2016 | 2015 CAM Reconciliation | $25,289.91 |
| 9/2/2016 | 2014 CAM Reconciliation | $4,927.86 |
| 9/2/2016 | 2014 CAM Reconciliation | $5,784.60 |
| 10/1/2016 | Pre-petition rent for 10/1/16 - 10/2/16 | $2,086.57 |
| 10/1/2016 | Pre-petition CAM charges for 10/1/16 - 10/2/16 | $783.00 |
| | Pre-petition sub-total | $83,350.30 |

---

[1] The question of adequate assurance of future performance has been resolved through the agreement of the parties that, *inter alia*, the post-petition arrears would be cured (which was done) and that GFRC will provide a security deposit equal to two months' rent.

{00021375. }                                          4

|  | Post-petition rent and additional rent: |  |
|---|---|---|
| 10/1/2016 | "Stub" rent for 10/3/16 - 10/31/16 | $30,255.30 |
| 10/1/2016 | "Stub" CAM Charges for 10/3/16 - 10/31/16 | $11,353.49 |
| 11/3/2016 | Men's RR Sensor (Nite Owl Inv. # P10354) | $3,436.50 |
| 11/3/2016 | Troubleshoot/Repair Duct Detector (Nite Owl Inv. # P10377) | $2,861.13 |
| 2/1/2017 | January 2017 CAM | $4,886.48 |
| 2/1/2017 | Late charges | $2,395.32 |
| 2/1/2017 | Interest Due through 1/31/2017 | $1,034.72 |
|  | Post-Petition sub-total | $56,222.94 |
|  | Total Default as of 2/1/2017 | $139,573.24 |

15. In light of the existing defaults as of the attempted exercise of the lease option, Tenant was barred under the plain language of the Lease from extending the Lease beyond January 31, 2018.

16. The post-petition defaults for repairs are provided for in Article 7.4 of the Lease, which requires the Tenant to reimburse the Landlord for necessary repairs within ten (10) days after receipt of a bill. Copies of the subject repairs bills are annexed hereto as Exhibit "E". The invoices were billed to the Tenant on November 3, 2016, and were in default after November 13, 2016.

17. Although the post-petition defaults, together with additional post-petition defaults after February 1, 2017 were later cured on or about June 24, 2017, the deadline by which the option had to be exercised had already expired months before on January 31, 2017.

**LEGAL ARGUMENT**

18. In discussions between counsel, the Tenant has indicated that it relies primarily upon the decision of the Ninth Circuit Bankruptcy BAP in *In re Circle K Corp.*, 190 B.R. 370 (9th Cir. BAP 1995); *aff'd*, *In re Circle K. Corp.*, 127 F.3d 904 (9th Cir. 1997); *cert. denied sub. Nom*, 522 U.S. 1148, 118 S.Ct. 1166 (1998) for its contention that the Tenant was not required to cure the Lease defaults when it sought to exercise the option.

19. In that case, the landlord commenced an adversary proceeding seeking a declaratory judgment that the debtors were tenants-at-will with no right to renew their leases, based on allegations relating to purported post-petition lease extensions in 1992[2]. The landlord contended that because the time to exercise the option had expired prior to the time to assume the lease, the debtor had no lease remaining to assume.

20. The BAP held that the debtor did not have to exercise the option to extend the lease until such time as the debtor assumed the lease. The BAP found that to hold otherwise would compel the debtor to cure pre-petition defaults prior to an assumption. The Court found that compelling the landlord to wait until assumption for the cure of the defaults and exercise of the option was in keeping with the spirit of the balance Congress established between landlords and tenants in permitting the debtor time to decide whether to assume or reject a lease, while at the same time "forcing the debtor to abide by the contract provisions during the pendency of the bankruptcy and cure any prepetition defaults upon assumption while prohibiting the creditor from enforcing any prepetition default remedies." *In re Circle K, supra*, 190 B.R. at 376.

21. On appeal, the Ninth Circuit agreed, explaining that to hold otherwise left the debtor with a Hobson's choice of losing a valuable asset or potentially preferring the landlord over other pre-petition claims by curing the default and then rejecting the lease. *In re Circle K, supra*, 127 F.3d at 910.

22. Notably, the defaults at issue in *Circle K* were pre-petition. As the BAP explained, there was a post-petition default of less than $200 that was apparently cured. *In re Circle K, supra*, 190 B.R. at 374, Note 3.

---

[2] There was also an issue about the purported exercise of a prior pre-bankruptcy extension option in 1987, but this was deemed waived by the Ninth Circuit, and is not germane to the issues raised in this case.

23. Thus, the facts of *Circle K* are substantially different from those presented here, where there were post-petition rent defaults in excess of $56,000, as well as pre-petition defaults aggregating more than $82,000. Thus, this case is far closer to the facts in *In re Leisure Corp.*, 234 B.R. 916 (9th Cir. BAP 1999), which distinguished *Circle K* on precisely this basis.

24. In *Leisure*, the Bankruptcy Court found that *Circle K* required it to hold that the debtor was entitled to exercise an option to extend the lease notwithstanding pre-petition and post-petition defaults. In reversing, the BAP held that the existence of post-petition defaults changed the analysis.

25. In light of the adoption of Section 365(d)(3) which requires the debtor in possession to timely perform under a lease, the BAP held that the Bankruptcy Court erred in concluding that the extension could automatically be exercised notwithstanding the post-petition defaults.

26. The BAP noted that Section 365(d)(3) does not specify a remedy for failure to keep current on a lease post-petition, and remanded the case for further determination. The BAP found that under Section 365(d)(3), the post-petition default was a factor to be considered in deciding whether the debtor should be permitted to exercise the option.

27. As the BAP explained, Section 365 is designed to balance the rights of the parties to the lease. "'[T]he purpose behind § 365 is to balance the state law contract right of the creditor to receive the benefits of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize.' *Circle K,* 127 F.3d at 909 (*quoting In re Circle K Corp.,* 190 B.R. 370, 376 (9th Cir. BAP 1995))." *Leisure*, *supra*, 234 B.R. at 922.

28. While *Circle K* and its progeny tip the scale in favor of extending the period to exercise a lease option when there is a pre-petition default, the Landlord submits that, under

*Leisure*, this Court should weigh all of the factors involved, and find that the Tenant's post-petition defaults preclude the right exercise of the option to extend the Lease.

29.  Here, the unpaid repair invoices clearly fall within the Tenant's Section 365(b)(3) obligations.  Unlike the situation in the Ninth Circuit, which had no set penalty in place for debtors who default under Section 365(d)(3), it has previously been held in Delaware that the failure of a debtor to keep current on its post-petition obligations is grounds for rejecting the lease. *See, In re DBSI, Inc.*, 407 B.R. 159, 164 (Bankr. D. Del. 2009) ("as I have stated in court on numerous occasions, I now explicitly confirm that an appropriate remedy for a violation of § 365(d)(3) is to cause the lease to be rejected in a timely fashioned manner.").  On this basis, the purported exercise of the option fails.

30.  Arguably, the Tenant had no similar affirmative duty under the Bankruptcy Code to pay the "stub" rent for October, 2016.  *See, In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir. 2001).  However, the Third Circuit Court of Appeals has also held that stub rent is an administration expense under Section 503(b), and not a pre-petition debt.  *In re Goody's Family Clothing, Inc.*, 610 F.3d 812 (3d Cir. 2010).  Thus, the stub rent constitutes a post-petition default.

31.  There is nothing in the Bankruptcy Code that bars a debtor from moving for authority to pay an administrative claim under Section 503(b), and the Tenant here could easily have done so.

32.  Even if the Tenant had no statutory duty to pay the stub rent under Section 365(d)(3), it had the ability to do so, and it was incumbent upon the Tenant to cure the default in paying the stub rent as well as the repair invoices, before it could take advantage of the privilege granted to it under the Lease and exercise the option.

33. Importantly, the applicable state law favors disallowance of the attempted exercise of the option. The Lease is governed by California law, which considers extension or renewal options to be a privilege that is strictly construed. *See, e.g.*, *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia Street LLC*, 2017 WL 745871 *6 (N.D.Ca. February 27, 2017)("Under California law, an option may be accepted or exercised only in strict compliance with its terms"); *Simons v. Young* 93 Cal. App.3d 170, 180 (Ct. App. 1979) ("an option . . . constitutes an irrevocable offer that can be converted into an enforceable contract only by acceptance on the terms specified in the offer").

34. Accordingly, the Courts of California have strictly enforced lease provisions barring the exercise of an option when there is an existing default. *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia Street LLC*, *supra*, 2017 WL 745871 at *7 ("[the tenant] was not entitled under Paragraph 56.1 of the Lease to exercise the option because it was in default in performing its obligations under the Lease"). Indeed, the California Courts have denied the equitable grant of relief involving the exercise of an option in the face of a default. *Bekins Moving & Storage Co., v. Prudential Ins. Co.*, 176 Cal. App.3d 245, 253 (Ct. App. 1985)("While a court may grant relief on traditional grounds for equitable intervention such as fraud, accident or mistake, it may not grant equitable relief to extend an option period beyond that agreed to by the parties when, as here, the failure to timely exercise the option is due entirely to the inadvertence or neglect of the optionee to which the optioner in no way contributed.")

35. Nothing prevented the Debtors from complying with their post-petition rent obligations. In fact, they were required by the Bankruptcy Code to cure the repair default. The post-petition defaults must have consequences.

36. Furthermore, the Lease at issue is but one of many that have been sold to fund a plan. The potential loss of the sale of this single Lease will not adversely impact the reorganization of these Chapter 11 cases. Thus, the balance of interests in this case favors the Landlord.

37. The Tenant was indisputably in default under the Lease at the time it sought to exercise a lease extension option, and was therefore barred from the exercise of that option by the clear and unequivocal language of the Lease.

38. Moreover, because the defaults were post-petition, the Tenant lost its right to additional time to exercise the option while it determined whether to assume or reject its Lease, which might otherwise have been available to the Debtor under 11 U.S.C. §365(d)(4).

39. Accordingly, while the Debtor may assume and assign the Lease to GFRC, the Lease term properly expires on January 31, 2018.

WHEREFORE, the Landlord respectfully requests the entry of an Order consistent with the foregoing, and granting such other relief as may be just and proper.

Dated: Wilmington, Delaware
      October 12, 2017

    Respectfully submitted,

    THE ROSNER LAW GROUP LLC
    *Local Counsel for the Landlord*

    By: */s/ Scott J. Leonhardt*
        Scott J. Leonhardt (DE # 4885)
    The Rosner Law Group LLC
    824 Market Street, Suite 810
    Wilmington, DE  19801
    Telephone:  (302) 777-1111
    Leonhardt@teamrosner.com

    —and—

J. Ted Donovan, Esq.
Goldberg, Weprin Finkel Goldstein LLP
Counsel for the Landlord
1501 Broadway – 22nd Floor
New York, New York 10036
Telephone: (212) 221-5700
TDonovan@gwfglaw.com

*Counsel to DK Connections LLC*